380 So.2d 40 (1980)
STATE of Louisiana
v.
Allen R. BOLDEN.
No. 65385.
Supreme Court of Louisiana.
January 28, 1980.
Rehearing Denied March 3, 1980.
*41 Howard M. Fish, Asst. Indigent Defender, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul J. Carmouche, Dist. Atty., Robert W. Gillespie, Jr., Asst. Dist. Atty., for plaintiff-appellee.
WATSON, Justice.
Allen R. Bolden pled guilty to possession of a firearm by a convicted felon in violation of LSA-R.S. 14:95.1 and to possession of an illegal firearm in violation of LSA-R.S. 40:1785, and reserved the right of appeal from the trial court's denial of his motion to suppress. State v. Crosby, 338 So.2d 584 (La., 1976). Defendant was sentenced to three and one-half years at hard labor on the first charge and a consecutive year at hard labor on the second charge. On appeal, defendant relies on one assignment of error.[1]
The assignment of error relates to the denial of defendant's motion to suppress the sawed-off shotgun seized at the time of arrest. The issue is whether the police officer had the right to make a forcible stop and search of defendant, i. e., whether there were reasonable grounds for suspicion of criminal conduct.

I. FACTS
The evidence at the trial of the motion to suppress was as follows. On February 9, 1979, at approximately 11:00 P.M., Officer Robert Rudd of the Shreveport Police Department, was stopped by an unidentified citizen, who reported that a black male in a nearby nightclub, "The Player's Choice", had a sawed-off shotgun stuck in the front of his pants. The man was described as being of medium height and slender build, wearing a black hat and black leather coat. (Tr. Vol. II, p. 6)
Officer Rudd and the citizen proceeded to the Player's Choice Lounge but found it closed. Officers Gurley and Rodgers met them there, and Officer Gurley obtained a more complete description of the suspect. He was a black male, a couple of inches taller than Gurley, who was wearing a black hat; a black full length leather coat; a vest; and light colored pants, tan or gold. He was in the company of two other men, and the shotgun was in the right side of his trousers. (Tr. Vol. II, pp. 12-13) Officer Gurley, a black policeman, knew from experience that most of the patrons of The Player's Choice went after hours to the Harlem House Cafe (Tr. Vol. II, p. 12). There was no one fitting the description in the Harlem House Cafe, and Officer Gurley waited in his patrol car across the street.
Approximately five minutes later, a man wearing a black hat, black leather coat, gold vest and gold pants got out of a car and walked away from the cafe. Two other people in the car entered the cafe. Officer Gurley got out of the police car and called to Bolden, the defendant, who stopped (Tr. Vol. II, pp. 14-15). Officer Gurley then frisked the outer clothing of the suspect and felt a hard object. He pushed the unbuttoned coat aside and saw the butt of a weapon. A light struggle ensued before Bolden was subdued with the assistance of Officer Rodgers. The weapon, a twelve gauge sawed-off shotgun, was seized and the defendant was placed under arrest.

II.
The seizure of the gun was valid only if the police officer had reasonable grounds for both (A) the initial detention of defendant; and (B) the frisk for weapons.

(A) INVESTIGATORY STOP
The Fourth and Fourteenth Amendments to the Federal Constitution, *42 as well as Article 1, § 5 of the Louisiana Constitution of 1974, protect against unreasonable searches and seizures. An investigatory stop on the street constitutes a "seizure", even though the purpose of the stop is limited and the resulting detention brief. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Louisiana has provided by statute for questioning of a person on reasonable suspicion of criminal activity and for a weapon search when there is a reasonable suspicion of danger to life and limb. LSA-C.Cr.P. art. 215.1.
Reason for an investigatory stop may be less than probable cause, but the detaining officer must have knowledge of facts which imply criminal behavior to justify interference with an individual's freedom. State v. Chopin, 372 So.2d 1222 (La., 1979); State v. Robinson, 342 So.2d 183 (La., 1977).
An informant's tip can provide a police officer with reasonable cause to detain and question a suspect. State v. Jernigan, 377 So.2d 1222 (La., 1979). Informant's tips vary greatly, however, in their value and reliability, rendering impossible one rule to cover every situation. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
The tip in the instant case was anonymous, although the tipster originally accompanied the police in their investigation. Defendant contends that, absent a known informant or some corroboration by independent sources, the policeman's actions in the present case were unreasonable.
In State v. Jernigan, supra, this court upheld an investigatory stop based on an anonymous tip which particularly described an individual at a certain location wearing a yellow shirt and blue pants who was suspected of carrying a concealed weapon. Also, see State v. Brown, 370 So.2d 547 (La., 1979). Information received from an anonymous tipster must carry enough indicia of reliability to justify the stop. The extensive information received here was fully corroborated by police observation.
In order to assess the reasonableness of an officer's conduct it is also necessary to weigh the governmental interest which allegedly justifies the intrusion upon rights of private citizens; the need to search or seize must be balanced against the harm of invasion. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). The crime being investigated here involved a sawed-off shotgun, which is an exceptionally dangerous weapon. It presented an immediate danger to the public, particularly in a nightclub setting. There was an acute public interest in swift police action.
Under the circumstances, which include (1) suspicion of a crime involving a particularly dangerous weapon, (2) a detailed eyewitness description of the suspect, and (3) verification by police observation in every detail, Officer Gurley was justified in detaining defendant.

(B) WEAPON FRISK
Even after a lawful stop, a police officer is not always justified in frisking a suspect for weapons. See State v. Hunter, 375 So.2d 99 (La., 1979). A weapon frisk is justified under circumstances where a "reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909 (1968). It is sufficient that an officer establish a "substantial possibility" of danger by pointing to particular facts which support such a reasonable inference. State v. Hunter, supra, at 101. See also Comment, Terry Revisited: Critical Update on Recent Stop-and-Frisk Developments, 1977 Wis.L.Rev. 877, 896.
In the course of the investigatory stop nothing transpired to dissuade Officer Gurley in his belief that defendant was armed and dangerous. Under the circumstances, a limited protective search of defendant's outer clothing for weapons was justified.

*43 III.
The initial detention for investigation and subsequent frisk of defendant by Officer Gurley were justified. The trial judge did not err in denying defendant's motion to suppress the shotgun.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
Disregarding the limits of reasonable cause for stop carefully marked out by Justice Rehnquist in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the majority opinion approves a detention and search based on an informant's tip having no more indicia of reliability than an anonymous telephone tip. The Supreme Court majority in Adams approved the police officer's action in plucking a gun from the defendant's waistband after receiving a tip that defendant had a gun in this spot and was carrying narcotics. The central reason given for this being a justifiable response to an informant's tip was that "[t]he informant was known to [the officer] personally and had provided him with information in the past ... [making] a stronger case than obtains in the case of an anonymous telephone tip." 407 U.S. at 146, 92 S.Ct. at 1923. Warning that "[s]ome tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation...," the high court expressly approved unverified tips as providing justifiable bases for investigatory stops in only two situations"when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime." 407 U.S. at 147, 92 S.Ct. at 1924. In the present case the tipster was not credible, i. e., he was not known to the police and had not provided information in the past, and he was not the victim of a street crime seeking immediate police aid. His tip was completely lacking in indicia of reliability. The officers therefore had no reasonable cause to stop and question the defendant who had engaged in no suspicious behavior whatsoever.
The majority opinion vindicates the concerns of the dissenters in Adams v. Williams, supra, that the easy extension of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to "possessory offenses" is a serious intrusion on Fourth Amendment safeguards. My brethren's opinion today in fact fulfills the prophecy of Chief Judge Friendly that there is involved in such an extension "too much danger that, instead of the stop being the object and the protective frisk an incident thereto, the reverse will be true." Williams v. Adams, 436 F.2d 30 at 38 (2 Cir. 1970), dissenting opinion.
NOTES
[1] Defendant has neither briefed nor argued Assignment of Error Number Two; therefore, we consider it to have been abandoned. State v. Bennett, 345 So.2d 1129 (La., 1977); State v. Blanton, 325 So.2d 586 (La., 1976).