# ELLSWORTH JOHNSON v. STATE OF MARYLAND

[No. 609, September Term, 1981.]

*Decided January 12, 1982.*

The cause was submitted on briefs to LISS, WILNER and COUCH, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Michael R. Braudes, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Stephen Rosenbaum, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Gregory Rothwell, Assistant State's Attorney for Baltimore City,* for appellee.

WILNER, J., delivered the opinion of the Court.

WILNER J., delivered the opinion of the court on motion by the State of Maryland for reconsideration at page 593 *infra.*

On the evening of February 5, 1981, Officer John Williams of the Baltimore City Police Department was approached by an unidentified middle-aged man who reported that he had observed someone in the Golden Slipper restaurant at 310 East Baltimore Street with "a gun in his top right shirt pocket." The citizen described the person as a black male in his middle thirties who was wearing a red jacket, dark blue pants, and a red shirt.

Officer Williams and his partner proceeded promptly to the restaurant about a block away, where they observed the appellant, who fit the description just recounted. Officer Williams approached appellant and, after ascertaining his identity, "frisk[ed] his outer garments." Feeling "a bulge in his top right pocket" which "felt like a gun handle," the officer reached into appellant's open coat and removed a handgun. After admitting that he did not have a gun permit, Johnson was arrested for a handgun violation.

On May 26, 1981, the case came to trial in the Criminal Court of Baltimore. A plea of not guilty was entered and, following this colloquy, which at no point indicated that appellant was aware that a jury's verdict must be unanimous, a jury trial was waived:

"MR. DURKIN [Attorney for appellant]: At this time Your Honor I would like to advise my client on the record, Mr. Johnson you are entitled to a jury trial. A jury trial is composed of twelve men and

women selected at random from the Voters' Registration of Baltimore City. Do you understand that?

MR. JOHNSON: Yes.

MR. DURKIN: Now you and I would have a chance to pass upon the jurors and impanel them and strike certain jurors out. Do you understand?

MR. JOHNSON: Yes.

MR. DURKIN: Now whether you are tried before a jury or tried before Judge Motsay alone, it would be the same standard, they must find you guilty beyond a reasonable doubt and to a moral certainty. Do you understand?

MR. JOHNSON: Yes.

MR. DURKIN: Now at this time, is it your election to waive your right to a jury trial?

MR. JOHNSON: Yes."

From his subsequent conviction, which yielded a sentence of two years imprisonment, appellant appeals, raising the following issues for our determination:

"1. Were the arrest and search of Appellant conducted in violation of his Fourth Amendment rights?

2. Did the trial court err in proceeding to trial without ascertaining on the record that Appellant knowingly waived his right to trial by jury?"

Because we find merit in appellant's second contention, we shall reverse the judgment of the court below and remand this case for a new trial.

Maryland Rule 735d,[1] as interpreted by the Court of

---

1. Maryland Rule 735d provides as follows:

"If the defendant elects to be tried by the court, the trial of the case on its merits before the court may not proceed until the court determines, after inquiry of the defendant on the record, that the defendant has made his election for a court trial *with full knowledge of his right to a jury trial* and that he has knowingly and voluntarily waived the right. If the court determines otherwise, it shall give the defendant another election pursuant to this Rule." (Emphasis added.)

Appeals in *Countess v. State,* 286 Md. 444, 455 (1979), requires that before a case proceeds to trial before the court,

> "the defendant have a basic understanding of the nature of a jury trial. We think that this understanding is generally satisfied when the defendant entitled to a jury trial knows that he has the right to be tried by a jury of 12 persons or by the court without a jury; that whether trial is by a jury or by the court, his guilt must be found to be beyond a reasonable doubt; *that in a jury trial all 12 jurors must agree that he is so guilty but in a court trial the judge may so find."* (Emphasis added.)

In point of fact, as shown from the Court's action in *Fairbanks v. State,* a companion case dealt with in *Countess* (*see* 286 Md. at 459-61), and subsequently in *Hunt v. State,* 286 Md. 541 (1979) and *State v. Ricketts,* 290 Md. 287 (1981), what this means is that the record must show that the defendant was *told* these specific facts. His "understanding" of them cannot be assumed.[2]

Accordingly, the absence from the record of any indication that appellant was told "that in a jury trial all 12 jurors must agree" before rendering a verdict compels us to reverse. As the Court held in *Countess,* "Rule 735 means what it says, and proceeding with the trials of the cases despite the failures to comply with its provisions requires reversal of the judgments of the trial courts and entitles the defendants to be newly tried." *Id.* at 463. "[A]s long as the Rule remains unchanged, it must be followed." *State v. Ricketts, supra,* 290 Md. at 293.

As the case will be remanded for new trial and it is likely that the validity of the search and seizure will again be tested, we shall, for the guidance of the trial court, address appellant's first issue. In doing so, however, we first must put it in the proper perspective.

---

2. We note that, effective January 1, 1982, the present Maryland Rule 735, which spawned *Countess,* will be replaced by a new Rule 735 that does not appear to require any particular litany. *See* 8 Md. Reg. 1928.

Appellant argues in his brief that (1) because "the police knew absolutely nothing about either the veracity of the informant, or the basis of his knowledge that Appellant possessed a weapon ... the informant's information was of no value" in establishing probable cause for arrest and (2) since he was searched prior to his arrest, his search was not a valid search incident to arrest. That misstates the issue actually before us. Officer Williams did not immediately place appellant under arrest when he entered the restaurant. Based on the information he had received, he first conducted a "stop and frisk" — an investigative stop followed by a frisk — to see whether appellant was indeed carrying a concealed weapon, and thus might be dangerous to the officer and to other persons in the vicinity. When he discovered the "bulge," he searched for the weapon and, after finding it, placed appellant under arrest.

There can be little doubt that, if the officer properly discovered that concealed weapon in appellant's possession, he had ample probable cause to effect the ultimate arrest. The real question is whether, at the time he entered the restaurant, the officer was justified in conducting the "stop and frisk" — whether the information supplied by the unknown informant coupled with his own observations gave the officer sufficient "articulable suspicion" to warrant that limited intrusion.

The seminal case in that regard is *Adams v. Williams*, 407 U.S. 143 (1972). There, a police officer on patrol in a high crime area was approached by a *known* informant who advised that an individual sitting in a car parked nearby had narcotics and a gun in his possession. The officer approached the car, tapped on the window, and asked the occupant (Williams) to open the door. Instead of opening the door, Williams lowered the window, whereupon the officer reached in and removed a gun from Williams' waistband — exactly where the informant told him it was. The officer then placed Williams under arrest. A subsequent search of the car produced a large amount of heroin, and Williams was convicted of possession of the gun and the heroin. The case

reached the Supreme Court on collateral attack through Federal *habeas corpus* proceedings.

The Court concluded that there had been no Fourth Amendment violation. Harking back to the principles enunciated in *Terry v. Ohio,* 392 U.S. 1 (1968), the Court confirmed that " 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest' " and that " '[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for concealed weapons." *Adams v. Williams,* 407 U.S. at 145-46, quoting, in part, from *Terry,* 392 U.S. at 22, 24.

Applying those principles from *Terry,* the Court held that the officer "acted justifiably in responding to his informant's tip." *Id.* at 146. In reaching that conclusion, the Court stated (pp. 146-47):

> "The informant was known to him personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene. Indeed, under Connecticut law, the informant might have been subject to immediate arrest for making a false complaint had Sgt. Connolly's investigation proved the tip incorrect. Thus, while the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, see, *e. g., Spinelli v. United States,* 393 U.S. 410 (1969); *Aguilar v. Texas,* 378 U.S. 108 (1964), the information carried enough indicia of reliability to justify the officer's forcible stop of Williams.
>
> In reaching this conclusion, we reject [Williams'] argument that reasonable cause for a stop and frisk

can only be based on the officer's personal observation, rather than on information supplied by another person. Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations — for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime — the subtleties of the hearsay rule should not thwart an appropriate police response." (Footnote omitted.)

The crux of the matter, then, is whether the information received by the officer has a sufficient level (indicia) of reliability to permit him to take what the Court referred to as "an intermediate response." *Id.* at 145. In making that judgment, a number of factors are considered including whether the informant was known to the officer. That particular factor is by no means determinative, however, although it was present and stressed in *Adams.*

The overwhelming weight of authority among the courts that have considered the question is that where, as here, an *anonymous* informant voluntarily approaches a law enforcement officer and gives accurate, detailed, and at least partially verifiable information concerning possible criminal activity, that information may give the officer adequate reason to stop and frisk the suspect described by the informant; and, if the officer finds sufficient evidence through the "stop and frisk" to constitute probable cause, the resulting arrest will not be held invalid. *See United States v. Sierra-Hernandez,* 581 F.2d 760 (9th Cir.), *cert. den.,* 439 U.S. 936 (1978); *United States v. Gorin,* 564 F.2d 159 (4th Cir. 1977), *cert. den.,* 434 U.S. 1080 (1978); *People v. Tooks,* 271 N.W.2d 503 (Mich. 1978); *People v. Lopez,* 52 Cal.App.3d

263 (1975); *United States v. Walker,* 294 A.2d 376 (D.C. 1972), *appeal dismissed,* 304 A.2d 290 (D.C.), *cert. den.,* 414 U.S. 1007 (1973); *State v. Bolden,* 380 So.2d 40 (La.), *cert. den.,* 449 U.S. 856 (1980); *People v. Jeffries,* 197 N.W.2d 903 (Mich.App. 1972).[3]

We find this line of authority, and the reasoning behind it, persuasive. Especially pertinent is the analysis used by the Michigan Supreme Court in *People v. Tooks, supra,* 271 N.W.2d 503. In judging whether information supplied by a citizen-informant carries enough indicia of reliability to satisfy the *Terry-Adams* criteria, the court looked at three factors: (1) the reliability of the informant, (2) the nature of the information given to the police, and (3) the reasonableness of the officer's suspicion in the light of the other two factors. Applying those factors, the court observed first that there was "nothing inherently unreliable about a citizen as opposed to a known informant giving information to the police," but rather that "information provided to law enforcement officers by concerned citizens who have personally observed suspicious activities is entitled to a finding of reliability when the information is sufficiently detailed and is corroborated within a reasonable period of time by the officers' own observations." *Id.* at 506. To favor a known informant, who is often himself involved with or on the fringe of criminal activity, over the volunteer citizen-informant the court found to be "illogical." We have expressed similar sentiments in the context of what it takes to establish "probable cause" under *Aguilar v. Texas,* 378 U.S. 108 (1964), and *Spinelli v. United States,* 393 U.S. 410 (1969). *See, for example, Hignut v. State,* 17 Md.App. 399,

---

**3.** *See also United States v. Unverzagt,* 424 F.2d 396 (8th Cir. 1970); *United States v. Legato,* 480 F.2d 408 (5th Cir.), *cert. den.* 414 U.S. 979 (1973); *Lawson v. United States,* 360 A.2d 38 (D.C. 1976); *State v. Hetland,* 366 So.2d 831 (Fla.App. 1979), *aff'd* 387 So.2d 963 (Fla. 1980); *State v. Hobson,* 523 P.2d 523 (Idaho 1974); *People v. McElroy,* 358 N.E.2d 1180 (Ill.App. 1976); *State v. Jernigan,* 377 So.2d 1222 (La. 1979), *cert. den.* 446 U.S. 958 (1980); *Commonwealth v. Anderson,* 318 N.E.2d 834 (Mass. 1974); *State in Interest of H.B.,* 381 A.2d 759 (N.J. 1977); *People v. McLaurin,* 403 N.Y.S.2d 720 (Ct.App. 1978) (all holding that information supplied to police *via telephone or handwritten message* by an anonymous informant justified a *Terry* pat-down search). *See, as well, Watkins v. State,* 288 Md. 597 (1980).

410 (1973); *Dawson v. State,* 14 Md.App. 18, 34 (1971)
(Moylan, J., concurring); and note the comments of the
Court of Appeals in *Watkins v. State, supra,* 288 Md. 597.

When the information supplied by the citizen-informant is
specific and subject to prompt verification, not only is the
second factor satisfied but it serves to enhance the infor-
mant's reliability as well, and thus add to the reason-
ableness of the officer's resulting suspicion.

In such a situation, asked the court in *State v. Hetland,
supra,* 366 So.2d at 833, "what is a policeman supposed to do?
... Must he ignore the information given?" Along with other
courts, we think not. We agree with the restatement from
*United States v. Sierra-Hernandez, supra,* 581 F.2d at 763,
that "[i]nformation from a citizen who confronts an officer in
person to advise that a designated individual present on [or
near] the scene is committing a specific crime should be
given serious attention and great weight by the officer." As
stated in *Adams v. Williams, supra,* 407 U.S. at 145, "[t]he
Fourth Amendment does not require a policeman who lacks
the precise level of information necessary for probable cause
to arrest to simply shrug his shoulders and allow a crime to
occur or a criminal to escape."

Applying these concepts to the facts before us here, we
believe that Officer Williams was justified in approaching
appellant to investigate the information he had just
received. Like the situation in *Adams,* the informant had
come forward personally to report that appellant was
carrying a concealed gun — an action which could have
resulted in the informant's arrest for making a false com-
plaint had subsequent investigation proved his tip to be
incorrect.[4] The information regarding the suspect — his
location and description — was specific, based on the infor-

---

4. Md. Ann. Code art. 27, § 150, provides:

"Any person who makes a false statement, report or complaint,
or who causes a false statement, report or complaint to be made, to
any peace or police officer of this State, or of any county, city or
other political subdivision of this State, knowing the same, or any
material part thereof, to be false and with intent to deceive and
with intent to cause an investigation or other action to be taken as

mant's direct observations made shortly before, and easily verifiable. When the officer went to the restaurant and saw the very person described by the informant, the totality of his information clearly sufficed to justify an investigatory stop.

Although the right to proceed further with a "frisk" "does not follow inexorably" from the right to conduct an investigatory stop (*Gibbs v. State,* 18 Md.App. 230, 238, *cert. den.* 269 Md. 759 (1973)), the nature of the information supplied here gave Officer Williams "reason to believe that the suspect [was] armed and dangerous." *Adams v. Williams, supra,* 407 U.S. at 146; *also People v. Tooks, supra,* 271 N.W.2d at 507. Consequently, the "frisk" was reasonable , and therefore justified, and the resulting discovery of a concealed handgun on appellant's person gave Officer Williams probable cause to place him under arrest. *See Adams* at 148.[5]

> *Judgment reversed; case remanded to Criminal Court of Baltimore for retrial; costs shall not be reallocated pursuant to Maryland Rule 1082f.*

On Motion by the State of Maryland for Reconsideration Wilner, J.:

In footnote 2 on page 3 of the Slip Opinion, we noted that effective January 1, 1982, Maryland Rule 735 was modified by the Court of Appeals and that, under the new Rule, the litany set forth in *Countess v. State,* 286 Md. 444 (1979), was no longer required.

This case was submitted on brief by both the State and appellant. The case was scheduled on the Court docket for December 11, 1981, notice of which was duly published in *The Daily Record,* commencing with the November 24, 1981 issue, and in the Maryland Register of November 13, 1981 (8 Md. Reg. 1850). Notice of the modification to Maryland Rule 735 was published in the Maryland Register of November 27, 1981 (8 Md. Reg. 1928). The State made no claim in its brief that the modification effective January 1, 1982, should be applied in this case; nor, despite, the notice of the modification given November 27, 1981, did it seek to have the case set for oral argument. In short, it was not until after the Opinion was filed on January 12, 1982, that the State belatedly argued that the new modification should be retrospectively applied. The motion is denied. Maryland Rule 1031; *Jacober v. High Hill Realty, Inc.,* 22 Md. App. 115 (1974).

---

a result thereof, shall be deemed guilty of a misdemeanor and upon conviction shall be subject to a fine of not more than five hundred dollars ($500.00), or be imprisoned not more than six (6) months, or be both fined and imprisoned, in the discretion of the court."

**5.** Since this case is being remanded for retrial, appellant's bare allegation that his conviction must be reversed due to perjury on the part of Officer Williams need not be dealt with.