COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judge Benton and
         Retired Judge Trabue[*]
Argued at Richmond, Virginia


WILLIE WINFIELD SCOTT

v.   Record No. 2417-93-2              OPINION BY
                                 CHIEF JUDGE NORMAN K. MOON
COMMONWEALTH OF VIRGINIA              AUGUST 29, 1995

        FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
              James M. Lumpkin, Judge Designate

        Cheryl Jakim Frydrychowski, Assistant Public Defender
        (David J. Johnson, Public Defender, on brief), for
        appellant.

        Eugene Murphy, Assistant Attorney General (James S.
        Gilmore, III, Attorney General, on brief), for
        appellee.


     Willie Winfield Scott was convicted of possession of a

firearm while possessing cocaine, possession of cocaine and

obstruction of a police officer.  On appeal he contends that the

charges of possessing cocaine and possessing a firearm while

possessing cocaine should be dismissed because the police officer

violated his constitutional rights when the officer seized and

frisked him on the basis of a general description provided by an

anonymous phone caller.  Scott further contends that because the

officer's seizure of him was unreasonable, his conviction of

obstructing the officer should also be reversed.  We affirm the

trial court's decision because the police officer had a

reasonable suspicion based on articulable facts that Scott was,

---

[*]Retired Judge Kenneth E. Trabue took part in consideration
of this case by designation pursuant to Code § 17-116.01.

or had been, engaged in criminal activity.  We need not address the issue of obstruction because Scott failed to raise the issue at trial as it is now presented on appeal.  See Rule 5A:18.  Even if we were to address the issue as presented, because we hold the officer had probable cause to conduct the pat down search of Scott we would not reverse the conviction of obstruction.

A City of Richmond police officer responded to a dispatch that a light-complexioned black man wearing a white t-shirt, black shorts, and Nike tennis shoes with no socks was brandishing a gun in a laundromat.  The patrolman was only a block away from the laundromat when he received the call and reached the laundromat about one minute later.  He saw Scott, who fit the description in the dispatch, leaving the laundromat.

The officer commanded Scott to "freeze" and to put his hands on the wall.  Scott complied and the officer patted him down, felt a hard object in Scott's waistband, and removed a .38 caliber revolver.  The officer then told Scott that he was under arrest for carrying a concealed weapon.  The officer asked Scott to put his hands behind him to be cuffed, but Scott started to resist and to struggle.  The officer put Scott's gun a few feet away and the two struggled.  During the struggle, Scott was trying to get away from the officer and at one time lunged in the direction of the gun.  Scott was finally subdued when a second officer came on the scene.  When that officer searched Scott, he found cocaine.

To justify a pat down under Terry v. Ohio, 392 U.S. 1

(1968), the stop and frisk must be based upon a reasonable belief that the person is armed and presently dangerous. Yabara v. Illinois, 444 U.S. 85, 93-94 (1979). Reasonableness is judged from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's intent or motivation. Graham v. Conner, 490 U.S. 386, 396-97 (1985). "Anonymous information that has been sufficiently corroborated may furnish reasonable suspicion justifying an investigative stop." Alabama v. White, 496 U.S. 325, 331 (1990).

The Commonwealth maintains that because the dispatch mentioned a gun, public safety warranted an immediate investigation. Scott argues that the anonymous tip in this case, standing alone, did not warrant a man of reasonable caution in belief that a stop was appropriate.

In the past, we have recognized a line of cases where courts have found reasonable suspicion for an investigatory stop when the public is in imminent danger, despite the fact that the stop is based on information provided by an anonymous informant who has not provided any basis of knowledge. See Beckner v. Commonwealth, 15 Va. App. 533, 538, 425 S.E.2d 530, 533-34 (1993); see also Johnson v. State, 50 Md. App. 584, 439 A.2d 607 (1982); Williams v. State, 629 S.W.2d 146 (Tex. Ct. App. 1982); Groves v. United States, 504 A.2d 602 (D.C. 1986); State v. Franklin, 41 Wash. App. 409, 704 P.2d 666 (1985). "The courts' reasoning in these cases," we said, "is that the imminent public

danger involved warrants immediate investigation."  Beckner, 15 Va. App at 538, 425 S.E.2d at 534.  However, in Beckner, because the appropriate circumstances did not exist, we never reached the question of whether a stop would have been justified if the anonymous informant had advised the officer that a suspect was engaged in dangerous activity that might cause immediate harm to the public.  Id. at 538-39, 425 S.E.2d 534.

In answering this question, the case of State v. Franklin, 41 Wash. App. 409, 704 P.2d 666 (1985), is both instructive and persuasive.  In that case, the Court of Appeals of Washington held that an anonymous informant's report to a police officer that he had seen a man in a public restroom in possession of a gun, which report included a description of the suspect's attire, was sufficiently reliable and contained sufficient objective facts to justify the officer's investigatory detention of the suspect, after verifying the suspect's location and appearance. Id. at 413, 704 P.2d at 669.

> The anonymity of an informant does not necessarily make an investigatory stop improper, especially when the informant's information indicates that a violent crime may occur. . . .
>
> [T]he unidentified citizen informant in the present case observed a person in public with a firearm and reported his observations almost contemporaneously with their occurrence.  The informant specified the public location of the suspect and gave a description of the suspect's attire.  In these unique and potentially dangerous circumstances, such a tip is sufficiently reliable to support an investigatory detention if the police immediately verify the accuracy of the description and location of the suspect.  Immediate police verification of the tip's innocuous details supports reasonable inferences that the anonymous informant's information is based on eyewitness

observation, and that the unverified portion of the tip [possession of a firearm] may also be accurate.

Id. at 412-13, 704 P.2d 669.

Other courts have also recognized the need for an immediate investigatory stop when an anonymous informant of undetermined reliability states that he or she observed a suspect carrying or displaying a gun in a public place. See State v. Kuahuia, 62 Haw. 464, 616 P.2d 1374 (1980) (where unidentified informant's tip was specific as to time and place, police officers immediately drove to place in question and their observations there tended to verify information received, and firearms were allegedly involved, police were justified in making temporary investigative stop of defendant's automobile); see also State v. Hasenback, 425 A.2d 1330 (Me. 1981) (telephone informant saw man on street with gun in his left rear pocket); State v. Bolden, 380 So. 2d 40 (La.) (unidentified citizen informant walked up to officer and stated that man in nearby nightclub had sawed-off shotgun in his pants), cert. denied, 449 U.S. 856 (1980); State ex rel. H.B., 381 A.2d 759 (N.J. 1977) (anonymous tip describing man in restaurant with gun in his possession).

We hold that, under the circumstances of this case, the officer's pat down search of Scott for a firearm was warranted for the officer's protection and the protection of the public. See State ex rel. H.B., 381 A.2d at 763. The police officer had been provided with Scott's description and the information that Scott was brandishing a firearm in a public place. The information from the anonymous source was reported to the officer

almost contemporaneously with the happening of the event.  The informant specified the public location of Scott and gave a detailed description of his attire.  Thus, when the officer arrived at the scene only one minute later and saw Scott, who matched the suspect's description, the officer was able to verify the accuracy of the description and location of the reported suspect.  Under these circumstances, the tip was sufficiently reliable to support the officer's investigatory detention and pat down search of Scott.

For all of the above-stated reasons, we affirm Scott's convictions.

<u>Affirmed.</u>

BENTON, J., dissenting.


In a case in which an anonymous tip conveyed detailed information to the police that a person was engaged in criminal activity, the Supreme Court of the United States declared it "a close case" and ruled as follows:

> [T]he independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller.
>
> [It is] also important that, as in [Illinois v. Gates, 462 U.S. 213 (1983)], "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted."

Alabama v. White, 496 U.S. 325, 332 (1990).

In Adams v. Williams, 407 U.S. 143 (1972), where the informant was known and "came forward personally to give information," id. at 146, the Supreme Court specifically noted that "[t]his is a stronger case than obtains in the case of an anonymous telephone tip." Id. Indeed, the personal identification and, thus, the apparent reliability that flows from an informant's actual presence or disclosure of identity remains an essential means of accountability that could support a determination that the police officer had specific, articulable facts that would warrant a Terry stop for further investigation. See Terry v. Ohio, 392 U.S. 1, 21 (1968). In Johnson v. State, 439 A.2d 607, 608 (Md. App. 1982), Williams v. State, 629 S.W.2d

146, 147 (Tex. Ct. App. 1982), and State v. Franklin, 704 P.2d 666, 668 (Wash. App. 1985), the informants personally gave information to the police officers.  In Groves v. United States, 504 A.2d 602, 602 (D.C. 1986), the informant identified himself to the police.  In none of these cases did the informant remain anonymous.

Furthermore, this Court's decision in Beckner v. Commonwealth, 15 Va. App. 533, 425 S.E.2d 530 (1993), from which the majority invokes an "imminent danger" doctrine, did not involve a report of a weapon and no doctrine of "imminent danger" was invoked to decide that case.  That case concerned a traffic stop based on a report that the driver was unlicensed.  Id. at 534, 425 S.E.2d at 531.  Furthermore, the informant in Beckner actually presented himself to the officer when he made the report.  Id.  Although the record did not disclose the name of the informant in Beckner, the personally reported tip imparted to the informant a degree of reliability that would not have existed had the informant remained invisible and unknown, as in this case.

The record in this case contains no basis upon which anyone could have determined that the invisible, unknown informant was reliable or had a basis to know anything other than the presence of the defendant, or someone similarly dressed, in the laundromat.  See White, 496 U.S. at 328.  Absent evidence that the informant was reliable or had a basis to know the reputed information, the record contains insufficient evidence to support

the police officer's obligation "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  Terry, 392 U.S. at 21.

In another case in which a police officer stopped and searched a person based on an anonymous tip that the person had a gun, this Court ruled that the search was unlawful and stated as follows:

> "[T]he test of constitutional validity [of a warrantless search] is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed."  An important element in establishing the reliability of an anonymous tip is the predictive nature of the information.  The information provided by the informant must describe not just easily obtained facts, but future third party actions not easily predicted.  Probable cause to arrest must exist exclusive of the incident search.

Hardy v. Commonwealth, 11 Va. App. 433, 434–35, 399 S.E.2d 27, 28 (1990) (citations omitted).

For these reasons, I would hold that the officer lacked a lawful basis to conduct a Terry stop.  Accordingly, I would reverse the convictions.