MOON, Chief Judge.
Willie Winfield Scott was convicted of possession of a firearm while possessing cocaine, possession of cocaine and obstruction of a police officer. On appeal he contends that the charges of possessing cocaine and possessing a firearm while possessing cocaine should be dismissed because the police officer violated his constitutional rights when the officer seized and frisked him on the basis of a general description provided by an anonymous phone caller. Scott further contends that because the officer’s seizure of him was unreasonable, his conviction of obstructing the officer should also be reversed. We affirm the trial court’s decision because the police officer had a reasonable suspicion based on articulable facts that Scott was, or had been, engaged in criminal activity. We need not address the issue of obstruction because Scott failed to raise the issue at trial as it is now presented on appeal. See Rule 5A:18. Even if we were to address the issue as presented, because we hold the officer had probable cause to conduct the pat down search of Scott we would not reverse the conviction of obstruction.
*727 A City of Richmond police officer responded to a dispatch that a Mght-eomplexioned black man wearing a white t-shirt, black shorts, and Nike tennis shoes with no socks was brandishing a gun in a laundromat. The patrolman was only a block away from the laundromat when he received the call and reached the laundromat about one minute later. He saw Scott, who fit the description in the dispatch, leaving the laundromat.
The officer commanded Scott to “freeze” and to put his hands on the wall. Scott compHed and the officer patted him down, felt a hard object in Scott’s waistband, and removed a .38 cahber revolver. The officer then told Scott that he was under arrest for carrying a concealed weapon. The officer asked Scott to put his hands behind him to be cuffed, but Scott started to resist and to struggle. The officer put Scott’s gun a few feet away and the two struggled. During the struggle, Scott was trying to get away from the officer and at one time lunged in the direction of the gun. Scott was finally subdued when a second officer came on the scene. When that officer searched Scott, he found cocaine.
To justify a pat down under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the stop and frisk must be based upon a reasonable behef that the person is armed and presently dangerous. Ybarra v. Illinois, 444 U.S. 85, 93-94, 100 S.Ct. 338, 343-44, 62 L.Ed.2d 238 (1979). Reasonableness is judged from the perspective of a reasonable officer on the scene allowing for the need of spht-second decisions and without regard to the officer’s intent or motivation. Graham v. Connor, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1985). “Anonymous information that has been sufficiently corroborated may furnish reasonable suspicion justifying an investigative stop.” Alabama v. White, 496 U.S. 325, 331, 110 S.Ct. 2412, 2416-17, 110 L.Ed.2d 301 (1990).
The Commonwealth maintains that because the dispatch mentioned a gun, pubhc safety warranted an immediate investigation. Scott argues that the anonymous tip in this case, *728 standing alone, did not warrant a man of reasonable caution in belief that a stop was appropriate.
In the past, we have recognized a line of cases where courts have found reasonable suspicion for an investigatory stop when the public is in imminent danger, despite the fact that the stop is based on information provided by an anonymous informant who has not provided any basis of knowledge. See Beckner v. Commonwealth, 15 Va.App. 533, 538, 425 S.E.2d 530, 533-34 (1993); see also Johnson v. State, 50 Md.App. 584, 439 A.2d 607 (1982); Williams v. State, 629 S.W.2d 146 (Tex.Ct.App.1982); Groves v. United States, 504 A.2d 602 (D.C.1986); State v. Franklin, 41 Wash.App. 409, 704 P.2d 666 (1985). “The courts’ reasoning in these cases,” we said, “is that the imminent public danger involved warrants immediate investigation.” Beckner, 15 Va.App. at 538, 425 S.E.2d at 534. However, in Beckner, because the appropriate circumstances did not exist, we never reached the question of whether a stop would have been justified if the anonymous informant had advised the officer that a suspect was engaged in dangerous activity that might cause immediate harm to the public. Id. at 538-39, 425 S.E.2d at 534.
In answering this question, the case of State v. Franklin, 41 Wash.App. 409, 704 P.2d 666 (1985), is both instructive and persuasive. In that case, the Court of Appeals of Washington held that an anonymous informant’s report to a police officer that he had seen a man in a public restroom in possession of a gun, which report included a description of the suspect’s attire, was sufficiently rehable and contained sufficient objective facts to justify the officer’s investigatory detention of the suspect, after verifying the suspect’s location and appearance. Id. at 413, 704 P.2d at 669.
The anonymity of an informant does not necessarily make an investigatory stop improper, especially when the informant’s information indicates that a violent crime may occur ....
[T]he unidentified citizen informant in the present case observed a person in public with a firearm and reported his *729 observations almost contemporaneously with their occurrence. The informant specified the public location of the suspect and gave a description of the suspect’s attire. In these unique and potentially dangerous circumstances, such a tip is sufficiently reliable to support an investigatory detention if the police immediately verify the accuracy of the description and location of the suspect. Immediate police verification of the tip’s innocuous details supports reasonable inferences that the anonymous informant’s information is based on eyewitness observation, and that the unverified portion of the tip [possession of a firearm] may also be accurate.
Id. at 412-13, 704 P.2d at 669.
Other courts have also recognized the need for an immediate investigatory stop when an anonymous informant of undetermined reliability states that he or she observed a suspect carrying or displaying a gun in a public place. See State v. Kuahuia, 62 Haw. 464, 616 P.2d 1374 (1980) (where unidentified informant’s tip was specific as to time and place, police officers immediately drove to place in question and their observations there tended to verify information received, and firearms were allegedly involved, police were justified in making temporary investigative stop of defendant’s automobile); see also State v. Hasenbank, 425 A.2d 1330 (Me.1981) (telephone informant saw man on street with gun in his left rear pocket); State v. Bolden, 380 So.2d 40 (La.) (unidentified citizen informant walked up to officer and stated that man in nearby nightclub had sawed-off shotgun in his pants), cert. denied, 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980); State ex rel. H.B., 75 N.J. 243, 381 A.2d 759 (1977) (anonymous tip describing man in restaurant with gun in his possession).
We hold that, under the circumstances of this case, the officer’s pat down search of Scott for a firearm was warranted for the officer’s protection and the protection of the public. See State ex rel. H.B., 381 A.2d at 763. The police officer had been provided with Scott’s description and the information *730 that Scott was brandishing a firearm in a public place. The information from the anonymous source was reported to the officer almost contemporaneously with the happening of the event. The informant specified the public location of Scott and gave a detailed description of his attire. Thus, when the officer arrived at the scene only one minute later and saw Scott, who matched the suspect’s description, the officer was able to verify the accuracy of the description and location of the reported suspect. Under these circumstances, the tip was sufficiently reliable to support the officer’s investigatory detention and pat down search of Scott.
For all of the above-stated reasons, we affirm Scott’s convictions.

Affirmed.