OVERTON, J.,
dissenting.
The possession without authority of a concealed firearrd by any individual in a public place or at a public event is a prescription for disaster, but the possession of a concealed firearm by a child is an especially dangerous and explosive situation. In deciding not to allow the stop and frisk in this case, the majority fails to follow the clear controlling precedent of this Court, and in addition expresses a holding contrary to the view of the overwhelming majority of jurisdictions that have considered the issue. In my view, the majority also makes a poor public. policy decision that is dictated neither by the law nor by common sense. The majority decision is not only bad policy — I believe it threatens the physical safety of the law enforcement officers and citizens of this state. What must be remembered is that the Florida and United States constitutions protect against “unreasonable searches and seizures.” Under the circumstances of this case, stopping and frisking this child and seizing the concealed weapon is not unreasonable.
The unfortunate reality of today’s society is that dangerous persons of all ages stand armed and ready to shoot law enforcement officers and citizens. I am unable to ignore the daily headlines of our nation’s newspapers and the statistics compiled by law enforcement agencies that reveal the great risk of harm posed by firearms in this country. According to the Uniform Crime Reports published by the Federal Bureau of Investigation, firearms claimed the lives of 92% of the 696 law enforcement officers killed in the line of duty from 1987 through 1996. Of those murders committed with firearms, 71% involved handguns — weapons that are easily concealed. Recent events have tragically demonstrated that children, such as the petitioner, and guns are an especially explosive mixture.[8] The violence involving firearms at our nation’s schools is a problem of major significance.[9] Unfortunately, the majority has virtually ignored the great harm caused by firearms and has lost sight of the fact that the rationale of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is to protect law enforcement officers and the general public from the dangers associated with armed suspects.[10] It has also lost sight of a common sense definition of the term “unreasonable.” The majority has acknowledged that the United States Supreme Court, in formulating the “reasonable suspicion” test under Terry, balanced the privacy interests of citizens with the safety interests of police *212 officers and the public.[11] With respect to the circumstances presented in this case, Judge Posner of the Seventh Circuit Court of Appeals wrote that the balancing test involves “the right of the people to be let alone and their right to be protected from armed predators.” United States v. DeBerry, 76 F.3d 884, 886 (7th Cir.1996). I believe that a proper balancing of the interests demonstrates that the government’s obligation to protect citizens and law enforcement personnel from violent crime substantially outweighs an individual citizen’s interest against the limited privacy intrusion of a Terry stop and frisk. This Court is not the first to address this issue. I would follow the strong majority view and hold that when the police receive an anonymous tip alleging that a person is carrying an illegally concealed weapon and only the innocent details of the tip are verifiable, the police may conduct an investigatory stop and frisk of the suspect. See, e.g., United States v. DeBerry, 76 F.3d 884 (7th Cir.1996); United States v. Clipper, 973 F.2d 944 (D.C.Cir.1992); United States v. McClinnhan, 660 F.2d 500 (D.C.Cir.1981); Speight v. United States, 671 A.2d 442 (D.C.1996); United States v. Johnson, 540 A.2d 1090 (D.C.1988); United States v. Mason, 450 A.2d 464 (D.C.1982); State v. Webb, 398 So.2d 820 (Fla.1981); Hetland v. State, 387 So.2d 963 (Fla.1980); State v. Kuahuia, 62 Haw. 464, 616 P.2d 1374 (Haw.1980); People v. Smithers, 83 Ill.2d 430, 47 Ill.Dec. 322, 415 N.E.2d 327 (Ill.1980); Graham v. Commonwealth, 667 S.W.2d 697 (Ky.Ct.App.1983); State v. Jernigan, 377 So.2d 1222 (La.1979); State v. Hasenbank, 425 A.2d 1330 (Me.1981); Johnson v. State, 50 Md.App. 584, 439 A.2d 607 (Md.Ct.Spec.App.1982); Commonwealth v. Stoute, 422 Mass. 782, 665 N.E.2d 93 (Mass.1996); Commonwealth v. McCauley, 11 Mass.App.Ct. 780, 419 N.E.2d 1072 (Mass.App.Ct.1981); State in re H.B., 75 N.J. 243, 381 A.2d 759 (N.J.1977); State v. Williams, 251 N.J.Super. 617, 598 A.2d 1258 (N.J.Super.Ct. Law Div.1991); People v. McLaurin, 43 N.Y.2d 902, 403 N.Y.S.2d 720, 374 N.E.2d 614 (N.Y.1978); State v. Pulley, 863 S.W.2d 29 (Tenn.1993); State v. Franklin, 41 Wash.App. 409, 704 P.2d 666 (Wash.Ct.App.1985). Apparently, the only case that supports the majority’s decision is Commonwealth v. Hawkins, 547 Pa. 652, 692 A.2d 1068 (Pa.1997).
To more fully explain my position, it is necessary to restate part of the facts in this case. The police received an anonymous tip that one of three young black males standing at a bus stop in front of a pawnshop at a specific and public location was carrying a concealed firearm. The tipster described the appearance of each of the young males and said that the individual with the gun was wearing a “plaid-looking” shirt. Officer Carmen Anderson, a police officer with more than fourteen years of experience, and another officer arrived at the scene only six minutes after receiving the anonymous complaint. The officers immediately verified the accuracy of all of the appearance and location information provided by the tipster. J.L. was standing by the bus stop with two other young black males and he was wearing a plaid shirt. Officer Anderson approached J.L., asked him to put his hands above his head, and conducted a pat-down of his outer garments. Officer Anderson then seized a gun that she saw protruding from J.L.’s left pocket. J.L. was taken into custody and charged with unlawfully carrying a concealed firearm[12] and possession of a firearm by a minor under eighteen years of age.[13]
J.L.’s motion to suppress was granted by the trial court. The Third District Court of Appeal reversed, holding that the police had a reasonable suspicion that J.L. was carrying a concealed weapon. The district court stated that the investigatory stop and frisk was justified because the surrounding circumstances indicated to the officers that the *213 anonymous tip was reliable. The district court noted that all of the information provided in the anonymous tip, except that relating to the concealed firearm, was verified by the police officers immediately upon their arrival at the scene. As to the inability of the police to verify the existence of the concealed firearm prior to the frisk, the district court stated that
where a confirmed tip concerns an individual with a gun, the officer is faced with the choice of stopping and searching the individual, or waiting until the individual brandishes or uses the gun and the latter choice is unacceptable, thus leaving the stop and frisk as the only reasonable choice.
J.L., 689 So.2d at 1118.
In reaching its decision, the district court appropriately relied upon this Court’s decision in Hetland v. State, 387 So.2d 963 (Fla.1980), which expressly adopted the decision of the Second District Court of Appeal in State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979). In Hetland, the sheriffs deputies received an anonymous tip that Hetland was on his way to a local tavern to shoot someone. The tipster gave Hetland’s description to the police and informed them that he was carrying a silver revolver. The deputies immediately proceeded to the tavern and identified Hetland sitting at the bar. “There was no commotion; all was quiet. [Hetland] was ... sitting at the bar and there was nothing in his manner or actions which was suspicious.” Hetland, 366 So.2d at 833 (emphasis added). One of the deputies asked Hetland to stand up. When Hetland complied, the deputy saw a gun protruding from Hetland’s waistband. The weapon was seized and Het-land was arrested for carrying an illegally concealed firearm. The trial court suppressed the revolver as evidence. On appeal, the Second District Court of Appeal reversed, holding that the tip was sufficiently reliable to justify the investigatory detention and seizure. On review, this Court summarily approved of the decision of the district court and expressly adopted its opinion.
One year following our decision in Het-land, this Court again considered the issue of the validity of a stop and frisk based on an anonymous tip that concerned a concealed weapon. In State v. Webb, 398 So.2d 820 (Fla.1981), a bulletin was issued for the police to “be on the lookout” (BOLO) for a white male with specific physical features who was suspected of having committed two armed robberies on the two previous days. The BOLO was based on apparently anonymous information. The BOLO also provided that the suspect was carrying a black gun. Six hours after the BOLO was issued, the police saw Webb walking down a street approximately two miles from the scene of the robberies. Because Webb matched the description given in the BOLO, the officers conducted a stop and frisk of Webb and recovered a concealed firearm. Webb was arrested for carrying the concealed firearm. Webb was not charged with the robberies that he had been suspected of committing, but was charged with carrying an illegally concealed weapon. The trial court denied Webb’s motion to suppress. On appeal, the district court reversed. This Court quashed the district court’s decision, holding that the apparently anonymous information in the BOLO was specific and corroborated such that it bore sufficient indicia of reliability. In conclusion, we wrote as follows:
Under the totality of the circumstances, we hold that the stopping and the frisking of Webb was valid and that the trial court correctly denied the motion to suppress.
To hold otherwise would place in jeopardy the lives of police officers who have made a valid stop and who have reason to believe that the suspect is armed. As Justice Harlan stated in his concurring opinion in Terry v. Ohio, “[t]here is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet.” 392 U.S. at 33, 88 S.Ct. at 1886. Upon the information known to the officers, failure to have stopped Webb would “have been poor police work indeed,” Terry v. Ohio, 392 U.S. at 23, 88 S.Ct. at 1881, and failure to frisk could have cost the officers their lives.
Webb, 398 So.2d at 826.
Hetland and Webb clearly control the issue presented in this case and demand the same *214 result. This Court in Hetland upheld the stop and frisk on material facts that are virtually identical to the facts of the present case, and this Court in Webb upheld the stop and frisk on facts that are notably weaker than the facts of the present case. The attempts of the majority to distinguish Hetland and Webb from the present case are wholly unpersuasive, and I fear that the majority opinion will confuse the law enforcement officers and trial judges who must confront the circumstances presented in this case on a daily basis. If the present majority of this Court is dissatisfied with the decisions of prior majorities of this Court, then it should say so, and recede from Hetland and Webb. I, of course, maintain that Hetland and Webb reached proper conclusions.
The law is clear that a police officer may make an investigatory stop of a citizen if the officer has a reasonable suspicion that the individual is committing or is about to commit a crime. Terry. The “totality of the circumstances” test is used to determine whether the investigatory stop was supported by the requisite reasonable suspicion. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). If the officer has a reasonable suspicion that the detained individual is armed and dangerous to the officer or others, a limited frisk for weapons may be conducted. Terry; Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). The United States Supreme Court has deemed such a stop and frisk to be a “limited intrusion.” Adams v. Williams, 407 U.S. 143, 148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)(emphasis added). Under appropriate circumstances, an anonymous tip may carry sufficient indicia of reliability to justify an investigatory stop and frisk. White, 496 U.S. at 328, 110 S.Ct. 2412. The reliability of the anonymous tip is based in part on the specificity of the information provided and the ability of police officers to quickly and independently corroborate significant aspects of the information. White, 496 U.S. at 331-32, 110 S.Ct. 2412. The corroboration of only the innocent details of an anonymous tip concerning certain illegal activities, such as the sale or possession of drugs, is insufficient to provide police officers with a reasonable suspicion of criminal activity. See Robinson v. State, 556 So.2d 450 (Fla. 1st DCA 1990). However, as stated by Professor LaFave:
It must be recognized that stoppings for investigation are not all of one kind and that in some instances the need for immediate action may be so great that substantial doubts about the reliability of the informant or his information cannot be permitted to stand in the way of prompt police action.
4 Wayne R. LaFave, Search and Seizure § 9.4(h), at 229 (3d ed.1996).
An anonymous tip concerning an individual with an illegally concealed firearm presents a unique situation. When confronted with this situation, police officers may not be able to verify more than the innocent details of the tip without substantially risking their safety or the safety of the general public. As stated by the Second Circuit Court of Appeals:
“The unique dangers presented to law officers and law-abiding citizens by firearms are well chronicled.” [United States v. Clipper, 973 F.2d 944, 949-51 (D.C.Cir.1992)]. An officer who is able to corroborate other information in an anonymous tip that another person is in actual possession of a gun is faced with an “unappealing choice.” United States v. McClinnhan, 660 F.2d 500, 502 (D.C.Cir.1981). He must either stop and search the individual, or wait until the individual brandishes or uses the gun. Id. at 502-503.
United States v. Bold, 19 F.3d at 104. I fully agree. To say that the officers in this case should have waited until this child did something more to arouse their suspicion is unreasonable. I fear that the “additional suspicious circumstances” required by the majority before the police may act will too often turn out to be the suspect’s actual use of the unseen firearm. In light of the recent homicides committed by children, I suspect that the public’s reaction to the majority’s decision will be, “Where is your common sense?”
I would do what the majority of jurisdictions have done and recognize a “firearm exception” to the general rule that the corroboration of only the innocent details of an *215 anonymous tip does not provide police officers with a reasonable suspicion of criminal activity. In my view, this holding is necessary because the great risk of harm to the public and police in such a situation substantially outweighs the limited privacy intrusion to the suspect. Such a holding is true to the dictates of Terry. “The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger. Terry, 392 U.S. at 27, 88 S.Ct. 1868 (emphasis added). Clearly, it is reasonable in today’s society for law enforcement officers confronted with the circumstances presented in this case to conduct a stop and frisk.
I strongly emphasize that this holding should apply only to investigatory stop and frisks supported by reliable anonymous tips regarding individuals possessing illegally concealed firearms. As explained by the United States Court of Appeals, District of Columbia Circuit, the distinction between an anonymous tip involving a firearm and a tip involving possession of other contraband, such as illegal drugs, is significant:
Th[e] element of imminent danger distinguishes a gun tip from one involving possession of drugs. If there is any doubt about the reliability of an anonymous tip in the latter case, the police can limit their response to surveillance or engage in “controlled buys.” Where guns are involved, however, there is the risk that an attempt to “wait out” the suspect might have fatal consequences.
United States v. Clipper, 973 F.2d at 951.
The anonymous tip in this ease specifically described the appearance and location of a juvenile carrying a concealed firearm. .The location was along a street where other members of the public were present. This fact raised the stakes for the officers because they had to worry about not only their own safety but also the safety of others nearby. The police officers, at least one of whom had substantial law enforcement experience, responded to the tip in a matter of minutes. The timing of their arrival ensured that the reported information was still fresh, thereby increasing the possibility that the officers would confront the suspect before any violence could occur and reducing the possibility that the officers would detain the wrong person. Upon arriving at the scene, the officers immediately verified all of the appearance and location information provided by the tipster. The only information the officers were unable to verify was J.L.’s actual possession of a concealed weapon. Officer Anderson conducted an investigatory stop and frisk of J.L. and seized a gun. This limited privacy intrusion was clearly reasonable and necessary for the protection of the officers and nearby members of the public. I would find that, under the totality of the circumstances, this anonymous tip concerning the illegal possession of a concealed firearm, corroborated by independent police work, justified the stop and frisk of J.L. Consequently, the seizure of the gun from J.L. would be valid. While the majority states that there is potential for abuse in recognizing a “firearms exception,” I believe the potential for such abuse is minimal when compared to the harm that concealed firearms may cause to law enforcement and the general public. Accordingly, consistent with our decision in Hetland and Webb, and the decisions of the majority of jurisdictions that have considered the issue, I would approve the decision of the Third District Court of Appeal in this case and disapprove Butts v. State, 644 So.2d 605 (Fla. 1st DCA 1994).
WELLS, J., concurs.

. Violent crime committed by juveniles continues to rise. FBI statistics presented to the United States House of Representatives show that the number of juveniles charged with murder increased 104 % from 1970 through 1992. 144 Cong. Rec. H226-27 (daily ed. ' Feb 3, 1998) (statement of Mr. Kingston). The number of juveniles arrested on weapons offenses has more than doubled over the past ten years. From 1965 through 1992, the number of twelve-year-olds arrested for violent crime rose 211 %; the number of thirteen and fourteen-year-olds arrested for such crime rose 301 %; and the number of fifteen-year-olds arrested for such crime rose 297 %. 143 Cong. Rec. H2.313-14 (daily ed. May 7, 1997) (statement of Mr. Solomon).

. Over the past two years, children as young as eleven years of age have shot classmates, teachers, and school administrators in cities such as Jonesboro, Arkansas; Bethel, Alaska; Olivehurst, California; Grayson, Kentucky; West Paducah, Kentucky; Pearl, Mississippi; Springfield, Oregon; Edinboro, Pennsylvania; Fayetteville, Tennessee; and Moses Lake, Washington. Undoubtedly, by the time this opinion is published, the list of cities where schoolyard homicides have occurred will have grown.

.In Terry, the Supreme Court wrote as follows:
[Wje cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.
Terry, 392 U.S. at 24, 88 S.Ct. 1868.

. The Supreme Court wrote as follows:
Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.
Terry, 392 U.S. at 27, 88 S.Ct. 1868.

. § 790.01(2), Fla. Stat. (1995).

. § 790.22(3), Fla. Stat. (1995).