**STATE of Minnesota,
Petitioner, Appellant,**

v.

**Russell Joseph DAVIS, Respondent.**

**No. C0–85–1796.**

Supreme Court of Minnesota.

Sept. 19, 1986.

---

Edward P. Starr, City Atty., Michael F. Driscoll, Reyne M. Rofuth, Asst. City Attys., St. Paul, Hubert H. Humphrey, III, Atty. Gen., St. Paul, for appellant.

Phillip G. Villaume, St. Paul, for respondent.

AMDAHL, Chief Justice.

We granted the petition of the state to review the 4–3 decision of the Court of Appeals in *State v. Davis*, 390 N.W.2d 4 (Minn.App.1986), which reversed the DWI conviction of Russell Joseph Davis on the ground that the stop which led to his arrest was an illegal stop based on a tip from an anonymous informant. Holding that the stop was legal, we reverse the Court of Appeals and reinstate the judgment of conviction.

At 2:12 a.m. on Saturday, April 6, 1985, St. Paul Police Officer John Cannefax was stopped on eastbound 11th Street at the intersection with Jackson waiting for the light to change. A vehicle southbound on Jackson—*i.e.*, coming from the officer's left—slowed down and a female passenger leaned out the passenger door window and shouted, "The car behind us just ran the red light!" As she said this, she motioned toward a red Ford Maverick, the only car in view at that time. Officer Cannefax followed the Maverick and eventually stopped it. He did not observe any erratic driving before he stopped the car. Once he stopped the car he made observations which gave him probable cause to believe that Davis, the driver, was under the influence of alcohol. Davis submitted to a breath test, which showed he had a blood alcohol concentration of .19.

The trial court denied a motion to suppress on fourth amendment grounds. Davis then stipulated to the above facts and waived his right to a jury trial. The trial court found Davis guilty of DWI.

The Court of Appeals, in a 4–3 decision, reversed the trial court on the ground that the stop was illegal. The court ruled that our decision in *Olson v. Commissioner of Public Safety*, 371 N.W.2d 552 (Minn.1985), was controlling and it distinguished *Marben v. State, Department of Public Safety*, 294 N.W.2d 697 (Minn.1980). The dissenters argued that *Marben* controlled and distinguished *Olson*.

In *Marben*, a trooper parked on I–94 near an intersection in Stearns County received a CB radio report from an unidentified person who said that he was a trucker and that he could see the trooper's car. The caller said that a motorist had been tailgating him for 60 to 70 miles. We held that there was no problem with the caller's basis of knowledge. We also reasoned that the trucker could be believed because he

apparently was a private citizen and because "due to the trucker's reference to the location of * * * [the trooper's] squad car and the vehicle in question, the trooper was able to verify that the trucker was in the area, and in close proximity to the subject car." 294 N.W.2d at 699.

In *Olson,* the officer on patrol received a dispatch that an anonymous person had called in and reported "possibly a drunken driver" driving westbound on Highway 55 from County Road 116 in a white Datsun with Minnesota license number EMN 880. The officer located the car, going eastbound on Highway 55, and followed it into a bar parking lot, then westbound onto Highway 55. He observed no erratic driving before stopping the car. We distinguished the case from *Marben* on the ground that nothing was known about the informant or about what led him to believe that the driver was "possibly" drunk. In other words, for all that the police knew, they were being asked to stop a car on the whim of an anonymous caller.

We conclude that the stop in this case was legal. Indeed, we think that this is an even stronger case for upholding the stop than *Marben* was because here there was, however brief, a face-to-face confrontation between the tipster and the officer. As stated in *United States v. Sierra-Hernandez,* 581 F.2d 760, 763 (9th Cir.1978), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978), "[b]y thus presenting himself to the [police officer] and doing so while driving a car from which his identity might easily be traced, the informant was in a position to be held accountable for his intervention."[1] In addition to having an even stronger basis than in *Marben* for

thinking the informant credible, the officer had information as solid as that in *Marben* for thinking that the informant had obtained her information in a reliable way. Clearly, either the informant or the driver had seen the car in question drive through the red light. Under the circumstances, we conclude, as we did in *Marben,* that the officer was as justified in stopping the car to investigate the violation as if he himself has seen the violation.

Reversed and judgment of conviction reinstated.

---

1. *Cf., State v. Lindquist,* 295 Minn. 398, 400, 205 N.W.2d 333, 335 (1973) (holding that police were justified in *arresting* person on basis of information provided directly to police by *named* citizen informer; reliance on the information was justified in part because the informant, by giving her name, "presumably [knew] that the police could arrest her for making a false report"); *State v. Williams,* 638 S.W.2d 417, 420 (Tenn.Crim.App.1982) (upholding arrest of defendant shortly after robbery on basis of a description and license number given to police by unidentified eyewitness in face-to-face

interview at scene of crime; "Frequently, police officers, upon arriving at the scene of a crime, are hurriedly given valuable information by an eyewitness. Based upon this information, hot pursuit results. Later, when the officers return to the scene, the eyewitness who gave the information may have long since departed. To require in these tumultuous circumstances that the officers stop and ascertain the name, address, and full identification of the informant is totally unreasonable. To do so would frequently negate the value of the information imparted to the officers.").