**Salem**

DONNA PHELPS BECKNER

v.

COMMONWEALTH OF VIRGINIA

No. 1600-91-3

Decided January 5, 1993

COUNSEL

David D. Embrey (Cunningham & Embrey, on brief), for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**MOON, J.**—Donna Phelps Beckner was convicted of operating a motor vehicle while her operator's license was suspended. She contends that the police officer lacked reasonable suspicion to stop her vehicle and, therefore, the evidence obtained should have been suppressed. We agree and reverse her conviction.

On April 26, 1991, an unidentified driver pulled his car and flashed his lights behind the cruiser of Officer Royal of the Lynchburg Police Department. When the officer pulled over, the driver pulled alongside the officer, rolled down his window, and stated that there was a white female, who did not have a driver's license, at a nearby gas station on Campbell Avenue pumping gas into a 1966 Chevrolet.

Based on this tip, the officer proceeded down Campbell Avenue where he observed the 1966 Chevrolet at the gas station. The officer followed the white female, the appellant, as she drove off the lot. The officer did not observe anything unlawful about her driving. As the appellant pulled into an Exxon station to use a pay phone, the officer activated his emergency lights, stopped his marked patrol car behind the appellant's vehicle, and immediately asked her for her license.

She told Officer Royal that she did not have a license, the suspension of which was later verified by a check with the Division of Motor Vehicles. At trial, the judge refused to grant a motion to suppress the evidence upon appellant's contention that the officer lacked reasonable suspicion to stop the vehicle.

First, the Commonwealth concedes that the officer effectuated a stop within the meaning of *Terry v. Ohio*, 392 U.S. 1 (1968), because the officer's actions constituted enough authority to lead a reasonable person to believe that she was not free to leave. *See Baldwin v. Commonwealth*, 243 Va. 191, 195-99, 413 S.E.2d 645, 647-49 (1992); *Waugh v. Commonwealth*, 12 Va. App. 620, 621-22, 405 S.E.2d 429, 429-30 (1991); *Florida v. Royer*, 460 U.S. 491, 501-02 (1983). Thus, the question is whether the police officer had reasonable suspicion to stop the appellant. *Terry*, 392 U.S. at 21-22.

■ The appellant asserts that the informant failed the reliability test of *Alabama v. White*, 496 U.S. 325 (1990), because the informant did not predict any future actions of the subject. The appellant construes *Alabama v. White* to hold that information supplied to the government by an unidentified informant may not establish reasonable suspicion to effect an investigative stop, unless the information predicts the future actions of the individual stopped. We disagree with the appellant on this point. We believe that a finding of reasonable suspicion may be warranted in some circumstances, despite the unidentified informant not providing the government with information that predicts the future actions of the subject, if some other indicia of reliability of the informant exists.

The informant here had a face-to-face confrontation with the police officer. Any informant who pulls alongside an officer should reasonably know that the police officer may track down his vehicle and learn his identity merely by tracing his license plate number. If this informant gives false information, he will be subject to prosecution for giving a false report of a crime to a police officer. *See* Code § 18.2-461. The fact that the police officer chose not to trace the informant does not make the informant less reliable than he would have been had the officer taken down the license number.

Thus, it was not necessary that the informant should have predicted future movements by Mrs. Beckner to establish some indicia of his reliability. Under these facts of the face-to-face confrontation, the police officer could have formed a reasonable belief that the informant was reliable. *State v. Davis*, 393 N.W.2d 179, 181 (Minn. 1986) (holding that an investigative stop was justified based on a face-to-face confrontation with an individual in an easily traceable car).

The Commonwealth also cites *State v. Davis* and contends that the informant in this case was not an anonymous tipster, based on the

face-to-face confrontation analysis above, and, thus, that reasonable suspicion to stop the appellant existed in this case. We do not believe *Davis* or other cases go as far as the Commonwealth contends to establish that information from a non-anonymous informant necessarily establishes reasonable suspicion. Even if the informant is not anonymous and some indicia of his personal reliability exists because of the face-to-face confrontation, the officer still must have some objective basis for accessing the reliability of the informant's knowledge of the information contained in his report in order to establish a reasonable and articulable suspicion to stop the suspect.

Despite some indicia of the informant's reliability, the basis of knowledge of the informant's *tip* in this case is still questionable. In *Davis*, the Minnesota Supreme Court found that reasonable suspicion existed, based on a report by an informant in a face-to-face confrontation with a police officer. Like the facts here, the informant in *Davis* had not predicted any actions by the suspect, but the basis of the informant's knowledge in *Davis* was not an issue. In *Davis*, unlike the case here, it was evident the informant actually saw the violation. The informant, who was a passenger in a car, pulled alongside a police officer and reported that the defendant had "just [run] the red light." 393 N.W.2d at 180. The court noted that this information was gained in a reliable way, because "[c]learly, either the informant [passenger] or the driver had seen the car in question drive through the red light." *Id.* at 181.

The Washington Court of Appeals used the same basis of knowledge analysis applied in *Davis* to answer the question whether a face-to-face report to a police officer of a probable nearby drunk driver justified reasonable suspicion to make a *Terry*-stop. In *Campbell v. Department of Licensing*, 31 Wash. App. 833, 644 P.2d 1219 (1982), the court reasoned that no factual information given by the passing motorist enabled the officer to determine the accuracy of the report. Although there was some indicia of reliability given the face-to-face confrontation, there was no basis of knowledge contained in the informant's report. If no basis of knowledge is stated in the motorist's report, it is unreliable and cannot be used to support an investigatory stop. *Id.* at 836, 644 P.2d at 1221.

██ Unlike *Davis*, where the court held that it was apparent that the informant had viewed the criminal act herself (the running of a red light), *Campbell* found insufficient the report by the motorist that there was a possible drunk driver. "It simply 'makes no sense to require

some indicia of reliability that the informant is *personally* reliable but nothing at all concerning the *source* of his information.' '' 31 Wash. App. at 835, 644 P.2d at 1220 (quoting 3 W. Lafave *Search and Seizure* § 9.3, at 100 (1st ed. 1978))(emphasis added). Based on the facts, the *Campbell* court did not assume that the motorist actually observed the erratic driving himself.

The informant in this case did not tell the police officer *how* he knew the appellant did not have a license. This fact is not as readily observable as the running of the red light violation that was observed in *Davis*. We cannot assume that the informant personally observed the lack of a driver's license himself. The informant must provide some basis for his knowledge before the police officer relies upon it as being reliable enough to support an investigatory stop. That information may come in questioning or it may be implied in the information. Such implications of a personal basis of knowledge may arise when an individual reports that a person has ''just run a red light,'' or ''nearly struck my vehicle,'' or ''is displaying a gun.''

██ In this case, the proof of criminal conduct required the informant to know the status of appellant's driver's license. Although the informant could see her driving, there is no indication that he had any reliable way of knowing whether her license had been suspended. The facts that the police rely upon must amount to more than an ''inchoate and unparticularized suspicion or 'hunch.' '' *Terry*, 392 U.S. at 27. Here, the informant's tip did not provide a range of detail that would elevate what may have been a mere ''hunch'' to a reasonable suspicion. If a hunch is not enough for a police officer to effectuate a stop, it follows that the hunch of an unnamed informant, albeit an informant with some indicia of personal reliability, is also not sufficient. The fact that the informant's hunch is conveyed to the police officer does not raise the hunch to the level of reasonable suspicion. ''Manifestly, this conduct falls below activity necessary to justify a reasonable suspicion that a violation of law had occurred or was occurring.'' *Zimmerman v. Commonwealth*, 234 Va. 609, 612, 363 S.E.2d 708, 710 (1988).

The Commonwealth also relies upon *Adams v. Williams*, 407 U.S. 143 (1972), where the Supreme Court found that reasonable suspicion to stop the defendant did exist. Justice Rehnquist stated in *Adams*:

The Fourth Amendment does not require a policeman . . . to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the

essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Id.* at 145-46 (citations omitted). Unlike this case, *Adams* involved an informant who had previously given the officer reliable information and who reported that a suspect sitting in a nearby car had narcotics and a gun at his waist. The informant here does not have such a substantial coat of reliability. Although the informant here was not anonymous, due to the face-to-face confrontation, he does not have as much indicia of reliability as a known informant who has given previous information, as in *Adams*. Furthermore, the facts in *Adams* imply that the informant observed the gun at the defendant's waist, thus establishing the basis of the informant's knowledge. Unlike the status of the appellant's license in this case, the gun in *Adams* at the defendant's waist could have been easily observed.

However, Justice Rehnquist's acknowledgment of an "intermediate response" by the officer should not be ignored. The officer here was not required merely to shrug his shoulders and let a possible crime go uninvestigated. To the contrary, in this case, the police officer could have run a license check on the appellant's vehicle, could have asked the informant how he knew that the appellant had no license, or could have waited until she stopped her vehicle and, without effectuating a "stop" within the meaning of *Terry*, simply approached her and asked her if she had a license. *See Baldwin v. Commonwealth*, 243 Va. 191, 196-97, 413 S.E.2d 645, 647-48 (1992).

A line of cases does exist where courts have found reasonable suspicion for an investigatory stop when the public is in imminent danger, despite the fact that the informant has not established any basis of knowledge. *See Johnson v. State*, 50 Md. App. 584, 439 A.2d 607 (1982); *Williams v. State*, 629 S.W.2d 146 (Tex. Ct. App 1982); *Groves v. United States*, 504 A.2d 602 (D.C. 1986); *State v. Franklin*, 41 Wash. App. 409, 704 P.2d 666 (1985). The courts' reasoning in these cases is that the imminent public danger involved warrants immediate investigation. Such a conclusion is not supported by the facts in this case. Here, there was no indication of imminent public danger. Thus, we do not reach the question of whether a stop would have been justified if the unknown informant in a face-to-face confrontation had

advised the officer that a suspect was engaged in imminently dangerous activity that could harm the public.

■ There are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists to stop an individual; instead the Court must look at the totality of the circumstances or the whole picture. *See Williams v. Commonwealth*, 4 Va. App. 53, 65, 354 S.E.2d 79, 85 (1987). We merely hold that under all the facts and circumstances of this case, reasonable suspicion did not exist to effectuate the stop. Although the informant had some indicia of reliability based on his face-to-face confrontation with the officer, the report contained no basis of knowledge by which to assess its accuracy. Therefore, the evidence should have been suppressed.

Accordingly, the judgment appealed from is reversed and remanded for a new trial, if the Commonwealth be so advised.

*Reversed and remanded.*

Koontz, C.J., and Bray, J., concurred.