BENTON, Judge,
dissenting.
The evidence proved that the police dispatcher relayed an anonymous telephone tip to the officer. The officer acted on the tip and stopped Gregory. However, the officer did not know the tipster and had no basis to believe the tipster was honest or rehable. The evidence failed to establish that the anonymous tipster was rehable. Thus, the evidence failed to prove that the officer had a reasonable articulable suspicion to support a Terry stop.
The principle is well established that “[t]he informant must provide some basis for his knowledge before the pohce officer rehes upon it as being rehable enough to support an investigatory stop.” Beckner v. Commonwealth, 15 Va.App. 533, 537, 425 S.E.2d 530, 533 (1993). In a case involving an anonymous *112 tip, the Supreme Court ruled as follows in upholding a Terry stop:
[T]he independent corroboration by the police of significant aspects of the informer’s predictions imparted some degree of reliability to the other allegations made by the caller.
[It is] also important that, as in [Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)], “the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.” Id., at 245[, 103 S.Ct. at 2335-36]____ What was important was the caller’s ability to predict respondent’s future behavior, because it demonstrated inside information—a special familiarity with respondent’s affairs.
Alabama v. White, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990). Despite the predictive nature of the tip and the corroboration, the Court nonetheless concluded that “it [was] a close case.” Id.
Although this Court, in dicta, has stated that reasonable suspicion may exist even if the anonymous tipster does not “provid[e] the government with information that predicts the future actions of the [defendant],” that statement was premised upon proof in the record that “some other indicia of reliability of the informant exists.” Beckner, 15 Va.App. at 535, 425 S.E.2d at 531. In the absence of predictive information, the ingredient that allowed the Supreme Court in White to infer that the content of the information “demonstrated [the tipster had] ... a special familiarity with the [suspect’s] affairs,” 496 U.S. at 332, 110 S.Ct. at 2417, the Commonwealth must prove that the tipster had a special familiarity with the details of Gregory’s affairs. Only then will the evidence support the anonymous tipster’s reliability through other “indicia.” See id. at 329-32, 110 S.Ct. at 2415-17.
The tip that the officer acted upon when he stopped Gregory “ ‘provide[d] virtually nothing from which one might conclude that [the tipster was] either honest or his information *113 reliable.’ ” 496 U.S. at 329, 110 S.Ct. at 2415. Nothing intrinsic to the tip reasonably allowed the officer to draw conclusions of honesty or reliability. The tip did not contain any information that indicated the tipster had a familiarity with Gregory’s affairs. The tip neither predicted his future behavior nor contained “a range of details relating not just to easily obtained facts and conditions existing at the time of the tip.” White, 496 U.S. at 332, 110 S.Ct. at 2417.
The substance of the tip might support an inference that the tipster saw Gregory in the vicinity. However, the tip did not convey any other information upon which an inference of guilt could have been made. The tipster might have been someone who merely bore a grudge against Gregory, or a practical joker, or another suspicious police officer. The record does not disclose any information concerning the tipster and contains no basis upon which to conclude that the tipster “appears to have been a concerned citizen.” Precisely because someone can easily harass another person, the Supreme Court has stated that “if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.” White, 496 U.S. at 330, 110 S.Ct. at 2416.
To guard against that same mischief, this Court barred Terry stops based on tips that reflected no more than a suspicion or a hunch of criminal activity.
The facts that the police rely upon must amount to more than an “inchoate and unparticularized suspicion or ‘hunch.’ ” Here, the informant’s tip did not provide a range of detail that would elevate what may have been a mere “hunch” to a reasonable suspicion. If a hunch is not enough for a police officer to effectuate a stop, it follows that the hunch of an unnamed informant, albeit an informant with some indicia of personal reliability, is also not sufficient. The fact that the informant’s hunch is conveyed to the police officer does not raise the hunch to the level of reasonable suspicion. “Manifestly, this conduct falls below activity necessary to justify a reasonable suspicion that a violation of law had occurred or was occurring.”
*114 Beckner, 15 Va.App. at 537, 425 S.E.2d at 533 (citations omitted). The tip in this case neither established that the caller was “honest [nor] his information reliable,” White, 496 U.S. at 329, 110 S.Ct. at 2415-16, nor negated the hypothesis that the tip was based solely on the observer’s hunch. Beckner, 15 Va.App. at 537, 425 S.E.2d at 533. “[Something more” than the tip was necessary to establish reasonable suspicion in this case. White, 496 U.S. at 329, 110 S.Ct. at 2415-16 (quoting Illinois v. Gates, 462 U.S. 213, 227, 103 S.Ct. 2317, 2326, 76 L.Ed.2d 527 (1983)).
The Commonwealth attempted to establish the tipster’s reliability by showing that the officer corroborated aspects of the tip by the officer’s independent observations. Although the officer testified that he observed facts reported by the tipster, he observed nothing more than any uninformed tipster might have seen. The criminal conduct that the tipster reported, which may have been embellished because of a hunch, was not observed by the officer.
The record established that the anonymous tipster described a person to the police dispatcher and informed the dispatcher that the person was “standing out in the roadway flagging motorists down to ask them if they wanted to buy drugs.” When the officer arrived at the particular street, he saw a man sitting in a vehicle and dressed as described by the tipster. The officer saw no criminal or unusual activity. Thus, the officer did not corroborate in any manner the tipster’s report of illegal conduct. The Commonwealth’s assertion that “[c]learly the officer reasonably inferred that the [tipster] had observed [Gregory] in the act of selling drugs” is baseless. This record provides no foundation from which any such inference could have been drawn. Before the officer stopped Gregory, the officer observed “nothing more than innocent details which any casual observer could have given.... Anyone who saw [Gregory] ... that day could have given the same description of him.” Hardy v. Commonwealth, 11 Va.App. 433, 435, 399 S.E.2d 27, 28 (1990).
*115 The corroboration the Commonwealth relies upon consists of wholly innocent activity that would normally not command the attention of the police. These facts do not provide a basis to conclude that the tipster was reliable and certainly do not negate the hypothesis that the tipster’s report was any more than a hunch of criminal activity. See Beckner, 15 Va.App. at 537, 425 S.E.2d at 533. The only reasonable inference to draw from these facts is that the tipster saw Gregory in the area, nothing more. Conceding that the officer did not observe Gregory approaching passing vehicles or engaging in other activity consistent with drug distribution, the majority concludes that Gregory’s departure from his car and “nervous” demeanor added credence to the tipster’s report that a similarly dressed person had been offering to sell drugs. I fail to see the connection. Nothing that the officer observed in Gregory’s behavior supported the tipster’s report. When Gregory walked away from his vehicle and watched the police vehicle, he was engaged in perfectly lawful activity. We have no idea why Gregory acted as he did. However, he had a right to walk away from a police officer unless the police officer had grounds to detain him. The circular nature of the majority’s reasoning is obvious. If you walk away from a police officer, you can’t be stopped except upon reasonable suspicion, but if you walk away, ipse dixit, you have given the officer reasonable suspicion.
In Smith v. Commonwealth, 12 Va.App. 1100, 407 S.E.2d 49 (1991), a police officer saw Smith shortly after 10:00 p.m. on a playground that had a reputation as a place where drugs were prevalent. When Smith looked in the officer’s direction, Smith suddenly placed something in his pants pocket. This Court held that the officer’s observations of “suspicious” activity were not sufficient to warrant an investigatory stop. 12 Va.App. at 1104, 407 S.E.2d at 52. See also Goodwin v. Commonwealth, 11 Va.App. 363, 367, 398 S.E.2d 690, 692 (1990); Moss v. Commonwealth, 7 Va.App. 305, 308, 373 S.E.2d 170, 172 (1988). Likewise, the evidence in this record does not support the trial judge’s finding that Gregory was *116 lawfully stopped. I would hold that the trial judge erred in refusing to suppress the evidence.
Furthermore, the evidence in this case failed to prove beyond a reasonable doubt that Gregory intended to distribute the cocaine that was seized. The Commonwealth’s proof of intent to distribute was based primarily upon the following testimony of the arresting officer:
Q Seven individual baggies with how much weight?
A 3.4 grams.
Q Based upon your training and experience, is that method of packaging with that weight, is that consistent with personal use or distribution?
A Distribution.
Q You base that on your years of working in the property section and your training and experience as a police officer?
A Yes, sir.
The officer admitted, however, that a user of cocaine could personally consume three grams of cocaine in two days. On cross-examination, the officer was unable to testify as to the usage of a typical addicted person.
Q Officer, based on your training and experience, how much crack cocaine could an individual smoke in a day if they’re an addict?
A If they’re an addict?
Q Yes.
A Well, I couldn’t really go into as far as what personal consumption would be for an individual.
The relatively small quantity of cocaine warrants the inference that Gregory possessed it for his personal use. See Dukes v. Commonwealth, 227 Va. 119, 122-23, 313 S.E.2d 382, 384 (1984). Moreover, no other evidence indicated an intent to distribute. The individual packages of cocaine were not unique. “The mode of packaging and the way the packages were hidden are as consistent with possession for personal use as they are with intent to distribute.” Id. at 123, 313 S.E.2d at 384.
*117 For these reasons, I would also hold that the evidence failed to prove beyond a reasonable doubt that Gregory possessed the cocaine with intent to distribute. Thus, I would reverse the conviction.