COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Fitzpatrick


RICHARD LEE CARTER, JR.

MEMORANDUM OPINION* BY
v.          Record No. 1159-95-2          JUDGE SAM W. COLEMAN III
                                          JULY 2, 1996
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF POWHATAN COUNTY
Thomas V. Warren, Judge

(William R. Blandford, Jr., on briefs), for
appellant.  Appellant submitting on brief.

(James S. Gilmore, III, Attorney General;
Brian Wainger, Assistant Attorney General, on
brief), for appellee.  Appellee submitting on
brief.


Richard Lee Carter, Jr. was convicted in a bench trial of

petit larceny, a subsequent offense, in violation of Code

§§ 18.2-96 and 18.2-104.  Carter contends that the trial court

erred by admitting into evidence illegally seized cartons of

cigarettes that allegedly were the subject of the larceny.  He

also asserts that the evidence is insufficient to support the

conviction.  Because the trial court erred by admitting the

cartons of cigarettes into evidence, we reverse the defendant's

conviction and remand the case for further proceedings if the

Commonwealth be so advised.  Accordingly, we do not address the

question of the sufficiency of the evidence.

On the evening of October 19, 1994, Hunter Goode, the

_____

* Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

assistant manager of the IGA supermarket in Powhatan County, observed the defendant enter the store with Kenneth Harold Gage and Richard Greene. Goode had seen the defendant and one of the other two men enter the store on at least five occasions in the preceding two months and had become suspicious of their activities. Consequently, Goode decided to closely watch the defendant, particularly after he placed approximately eight cartons of cigarettes in his shopping basket. When the defendant noticed that Goode was watching him, he walked to the checkout stand, placed his basket on the counter, and stated that he had to go to his car to get money. The defendant then exited the store and did not return; he "walked down the sidewalk" and was picked up in a car driven by Gage and occupied by Greene.

Goode did not see the defendant take anything from the store, but Goode remained suspicious and decided to ban the three men from the store. Accordingly, Goode called the Sheriff's Department in order to obtain their names, addresses, and Social Security numbers. Deputy Sheriff Darren Law responded to the call, and after talking with Goode, Law located and followed the vehicle in which Gage, Greene, and the defendant were riding. Deputy Law stopped the vehicle for the purpose of advising the men "that they were no longer welcome[] at IGA and that they were never to come back again." When Law approached the vehicle, Gage and Greene were sitting in the front seat and the defendant was lying down in the backseat.

Deputy Law noticed a Food Lion bag between Gage and Greene, whereupon he "advised them that they were suspects in a shoplifting from the IGA." Law "asked them what was in the bag"; Law determined that it contained "a half full carton of Newport cigarettes" and "several cartons of Marlboro cigarettes." Deputy Law found "two or three other . . . cartons of Marlboros" under the backseat. The serial number "912" was stamped on five of the eight cartons that Law recovered from the vehicle.

Deputy Law called Goode, who told Law that he suspected the men of stealing cigarettes and verified that "912" was IGA's identification number. Law arrested the three men. After the defendant was advised of his <u>Miranda</u> warnings, he gave the following written statement:

> I entered the store to pick up a few things and also some cigarettes. I placed six cartons into the basket, and the other two guys came into the store and got them by placing them on themselves, leaving the store. They then returned to pick up the remainder of the cigarettes, and the store manager seemed to notice something about them as well as myself, began walking the store everywhere I went. They got food and were on the way out the store, got into the car together and picked me up about 10 or 15 yards. I got into the back of the car, and they said to get down and do something with the cigarettes. I removed the ones I seen and placed them under the back seat.

At trial, the court admitted into evidence, over the defendant's objection, the eight cigarette cartons that Deputy Law recovered from the vehicle. The court also admitted, without objection, the defendant's written statement.

The Commonwealth concedes that Deputy Law seized the defendant, for fourth amendment purposes, when he stopped the vehicle. Therefore, the question is whether Deputy Law possessed reasonable and articulable suspicion to conduct an investigatory stop. Terry v. Ohio, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

When a law enforcement officer receives information about possible criminal activity from an ordinary citizen in a "face-to-face confrontation," the officer can "form[] a reasonable belief that the informant [is] reliable." Beckner v. Commonwealth, 15 Va. App. 533, 535, 425 S.E.2d 530, 532 (1993); see State v. Davis, 393 N.W.2d 179, 181 (Minn. 1986); State v. Ege, 420 N.W.2d 305, 308 (Neb. 1988); State v. Davis, 517 A.2d 859, 868 (N.J. 1986). Nevertheless, "[t]he informant must provide some basis for his knowledge before the police officer relies upon it as being reliable enough to support an investigatory stop. That information may come in questioning or it may be implied in the information." Beckner, 15 Va. App. at 537, 425 S.E.2d at 533.

Here, Hunter Goode testified that he "called the Sheriff's Department and asked them to get the names and addresses and social security number of the [defendant and his companions] so [he could] have them banned from the store." Goode did not testify that he had reason to believe that they had stolen items from IGA, nor did he report that he suspected them of having

- 4 -

committed a criminal act.  Deputy Law confirmed that his purpose in stopping the vehicle was "[t]o advise [the men] that they were no longer welcome[] at IGA and that they were never to come back again."  Deputy Law further testified that he "didn't have time to talk to [Goode] . . . before the vehicle got out of the parking lot," apparently referring to the vehicle in which Gage, Greene, and the defendant were traveling.  Consequently, Law called Goode to "ask[] him what [the men] were suspected of stealing" <u>after</u> he stopped the vehicle and after he had found the cigarettes.  According to this record, Goode did not tell Deputy Law of any suspected criminal activity that he observed which was the reason for Goode banning the men from the store.  Neither Goode nor Law testified that Goode informed Law of any reasons or facts that would have led Law to suspect that the defendant was engaged in criminal activity.  In fact, although Goode testified that the defendant acted suspiciously, he also stated that he did not see the defendant take any cigarettes or other items from the store and did not tell Law why he wanted them banned from IGA. Therefore, although Deputy Law "advised [Gage, Greene, and the defendant] that they were suspects in a shoplifting from the IGA," the evidence fails to show that either he or Goode had reason to suspect that they were, or had been, engaged in criminal activity.

The fact that Goode informed Deputy Law that he wanted the men banned from the IGA, without further explanation, does not

support an inference that the men were, or had been, shoplifting. "Implications of a personal basis of knowledge may arise when an individual reports that a person has 'just run a red light,' or 'nearly struck my vehicle,' or 'is displaying a gun.'" Beckner, 15 Va. App. at 537, 425 S.E.2d at 533. The request that Deputy Law received from Goode did not provide any indication of what Goode had witnessed or why he wanted the men banned from the store. Deputy Law could not reasonably infer that Goode had witnessed the defendant engaging in criminal activity or reasonably suspect him of criminal activity merely from learning that Goode had banned the defendant from the store. A decision to ban persons from a grocery store could be based upon inappropriate dress or language, disruptive behavior, or a myriad of reasons not related to suspected criminal activity. Accordingly, Goode's statement that he was banning the men from the store did not provide a basis for him to personally suspect the defendant of criminal activity, and in the absence of further information, Deputy Law did not have an articulable reason to suspect the defendant of criminal activity. Thus, Deputy Law had no basis for conducting an investigatory stop, and the cigarette cartons that were obtained as a result of that stop were the product of an illegal seizure.

The Commonwealth contends that even if the trial court erred by admitting the cigarettes, the error was harmless. "Constitutional error . . . is harmless only when the reviewing

court is 'able to declare a belief that it was harmless beyond a reasonable doubt." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (quoting Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L.Ed.2d 765 (1967)). The cigarettes Deputy Law found in the vehicle tended to independently prove that the defendant was guilty of the charged offense, and also corroborated the defendant's statement to the police. The evidence that tends to prove defendant's guilt, absent the cigarettes, is not overwhelming. White v. Commonwealth, 21 Va. App. 710, 716, 467 S.E.2d 297, 300 (1996). Thus, we cannot conclude that the admission of the cigarettes was harmless beyond a reasonable doubt.

Because the trial court committed reversible error by admitting the cigarettes into evidence, we do not decide whether the evidence is sufficient to support the conviction. We reverse the defendant's conviction and remand the case for further proceedings if the Commonwealth be so advised.

Reversed and remanded.