COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Willis and Elder
Argued by Teleconference


COMMONWEALTH OF VIRGINIA

                                     MEMORANDUM OPINION[*] BY
v.         Record No. 0813-97-2     JUDGE JERE M. H. WILLIS, JR.
                                          AUGUST 26, 1997
ALLEN EUGENE HARRIS


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Robert W. Duling, Judge

        Michael T. Judge, Assistant Attorney General
        (Richard Cullen, Attorney General, on brief),
        for appellant.

        Carl C. Muzi for appellee.


        The Commonwealth contends that Harris was not seized, and,

alternatively, that an investigatory stop was justified based

upon a reasonable suspicion that Harris may have been engaged in

criminal activity.  We disagree, and affirm the judgment of the

trial court.

                        I.   BACKGROUND

        When viewed in the light most favorable to Harris, the party

prevailing below, see Commonwealth v. Grimstead, 12 Va. App.

1066, 1067, 407 S.E.2d 47, 48 (1991), the evidence proved that at

approximately 12:00 p.m., a motorist flagged down Officer Peace

and "told [him] there was a man in the McDonald's . . . that he

thought had a gun."  The unnamed informant described the man as a

_____

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

"black male . . . in his thirties or forties and he had on a green jacket."

Peace entered the restaurant, saw Harris, who fit the informant's description, and "accompanied him out of the store as [he] was initiating and continuing" a casual conversation with Harris.  Around the time that they exited the restaurant, a marked police cruiser and a patrol wagon pulled into the parking lot.  Two uniformed police officers alit from their vehicles and approached near where Harris and Peace stood.  The exterior wall of the restaurant was immediately behind Harris.  He testified that he was "surrounded" by the three officers.

> Peace testified that once they left the restaurant:
> Well, I just started talking about the specifics of why I was there.  I said something to him to the effect that I had just been flagged down by somebody that said you might have had a gun and had described the person and said look, you match the description of the person that I was told had a gun so what I would like you to do -- so I asked him if he had a weapon and he said he did.

Peace took a 10 millimeter semi-automatic pistol from Harris' jacket, and arrested him for carrying a concealed weapon without a permit.  Harris testified that Peace told him he was under arrest before asking him about a gun.

The trial court ruled that Harris had been seized without the required reasonable suspicion of unlawful conduct.

## II.  STANDARD OF REVIEW

On appeal of a ruling suppressing evidence, the Commonwealth

- 2 -

must prove, viewing the evidence in the light most favorable to the defendant, that the trial court's decision constituted reversible error. Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980) (citation omitted). As a general matter, determinations of reasonable suspicion are reviewed de novo. James v. Commonwealth, 22 Va. App. 740, 743, 473 S.E.2d 90, 91 (1996) (citing Ornelas v. United States, 517 U.S. ___, 116 S. Ct. 1657 (1996)). However, "[i]n performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officials." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citation and footnote omitted).

### III. SEIZURE

"A person is seized 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (en banc) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)). Indeed, "[a]n encounter between a law enforcement officer and a citizen in which the officer merely identifies himself and states that he is conducting a narcotics investigation, without more, is not a seizure within the meaning of the Fourth Amendment but is, instead, a consensual encounter."

McGee, 25 Va. App. at 199, 487 S.E.2d at 262. The Commonwealth contends that the presence of the three police officers did not dispel the consensual and casual nature of the encounter.

This case closely parallels McGee. In McGee, an anonymous informant reported to the police that an unidentified individual was selling drugs on a street corner. Id. at 196, 487 S.E.2d at 260. Three uniformed officers arrived in marked police vehicles and approached the defendant, who matched the description given to police. One of the officers told the defendant that he matched the description of the individual who was reported to have sold drugs, and asked if he could pat him down. When the defendant opened his clenched fists at the officer's demand, he revealed a white substance and was placed under arrest for drug possession. Id. at 197, 487 S.E.2d at 261.

Holding that the officers "seized" the defendant by a show of authority, we noted that "when a police officer confronts a person and informs the individual that he or she has been specifically identified as a suspect in a particular crime which the officer is investigating, that fact is significant among the 'totality of the circumstances' to determine whether a reasonable person would feel free to leave." Id. at 200, 487 S.E.2d at 262 (footnote omitted).

Peace told Harris that he, specifically, was the focus of a criminal investigation. Peace accompanied Harris from the restaurant. Outside, three uniformed police officers maintained

a perimeter around Harris. These facts support the trial court's ruling that Harris was seized when he submitted to the officers' show of authority. A reasonable person in Harris' situation would not have believed that he was free to leave. See Satchell, 20 Va. App. at 649-50, 460 S.E.2d at 257; McGee, 25 Va. App. at 201, 487 S.E.2d at 263.

## IV. REASONABLE SUSPICION

Generally, "[t]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)).

In Beckner v. Commonwealth, 15 Va. App. 533, 425 S.E.2d 530 (1993), an unidentified driver informed a police officer that a white woman, who was pumping gas into a 1966 Chevrolet at a nearby filling station, did not have a driver's license. Id. at 534, 425 S.E.2d at 531. On the basis of that tip, the officer stopped the defendant and discovered that her license was suspended. Holding that the circumstances did not give rise to reasonable suspicion, we noted that:

> The informant must provide some basis for his knowledge before the police officer relies upon it as being reliable enough to support an investigatory stop. That information may come in questioning or it may be implied in the information. Such implications of a personal basis of knowledge may arise when an individual reports that a person . . . "is displaying a gun."

Id. at 537, 425 S.E.2d at 533 (emphasis added). See Gregory v. Commonwealth, 22 Va. App. 100, 106-07, 468 S.E.2d 117, 120 (1996).

In McGee, we found no credible evidence justifying the stop. A police officer received an anonymous tip that a black male, wearing a white t-shirt, black shorts and white shoes, was selling drugs on a street corner. McGee, 25 Va. App. at 196, 487 S.E.2d at 260. While the defendant fit the description contained in the tip, the officer "did not observe any suspicious activity or furtive gestures by the defendant that tended to verify or corroborate the citizen's tip that the defendant was engaged in criminal activity." Id. at 203, 487 S.E.2d at 264.

> If a hunch is not enough for a police officer to effectuate a stop, it follows that the hunch of an unnamed informant, albeit an informant with some indicia of personal reliability, is also not sufficient. The fact that the informant's hunch is conveyed to the police officer does not raise the hunch to the level of reasonable suspicion.

Beckner, 15 Va. App. at 537, 363 S.E.2d at 710.

In this case, Harris was found in a fast-food restaurant around 12:00 noon. See Gregory, 22 Va. App. at 107-08, 468 S.E.2d at 121. The tipster stated that he thought a man matching Harris' description had a gun. The tipster stated neither that he saw a gun, nor why he thought Harris had a gun. Cf. Scott v. Commonwealth, 20 Va. App. 725, 460 S.E.2d 610 (1995). Peace made no effort to explore the basis for the tipster's hunch. The record contains no indication that Harris acted in a manner so as

to "verify or corroborate" that he might be engaged in criminal activity.

The record supports the trial court's conclusion that the officers lacked reasonable suspicion to detain Harris. Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>