COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Fitzpatrick and Senior Judge Duff
Argued by Teleconference


COMMONWEALTH OF VIRGINIA
                                    MEMORANDUM OPINION[*] BY
v.          Record No. 1280-97-3     JUDGE LARRY G. ELDER
                                       OCTOBER 21, 1997
JAMES ANTHONY YOUNGER

              FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                    William N. Alexander, II, Judge

              Eugene Murphy, Assistant Attorney General
              (Richard Cullen, Attorney General, on brief),
              for appellant.

              No brief or argument for appellee.


        The Commonwealth appeals a pretrial order of the trial

court suppressing evidence obtained during a stop of a car driven

by James Anthony Younger (defendant).  It contends that the trial

court erred when it concluded that the officer who executed the

stop did not have a reasonable, articulable suspicion of criminal

activity.  For the reasons that follow, we reverse and remand.

        On January 25, 1997, between 6:00 p.m. and 6:30 p.m., Floyd

Hille, Chief of the Gretna Police Department, received a phone

call from a person who identified herself as Terri Younger, wife

of the defendant.  Chief Hille believed that the caller was Mrs.

Younger because he had spoken with Mrs. Younger two or three

times before, and the caller's voice sounded like Mrs. Younger's

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

voice. The caller asked Chief Hille to be on the lookout for a dark blue, four-door, 1985 Oldsmobile with license plate number ZJH-9972. The caller said that the vehicle was registered in her (Mrs. Younger's) name and that she had "dropped the insurance on the vehicle." Chief Hille told the caller that he would look for the vehicle. The caller did not mention defendant at any time during the phone call.

Chief Hille was familiar with the Oldsmobile identified by the caller because Mrs. Younger had called him on prior occasions to inform him that defendant was driving it. In response to these calls, Chief Hille attempted to "find and locate" defendant. In addition, the chief had stopped defendant in the Oldsmobile about a month earlier on December 25, 1996. After he received the phone call, Chief Hille "ran" the license plate number given to him by the caller in a computer data base, which informed him that the Oldsmobile was registered in Mrs. Younger's name. Chief Hille resumed his patrol and made efforts to find the Oldsmobile. Around 11:15 p.m., Chief Hille spotted the vehicle about to pull away from a gas station. Chief Hille could not see who was driving the Oldsmobile because it had tinted windows. Although Chief Hille did not observe the driver of the car commit any traffic infractions, he decided to stop the vehicle "to advise the driver that [he] had information that it was uninsured [and] . . . to take it off the road." The chief activated the blue lights on his vehicle and stopped the

Oldsmobile, which was being driven by defendant. On February 18, 1997 a grand jury indicted defendant for a second or subsequent offense of operating a motor vehicle after being adjudged an habitual offender in violation of Code § 46.2-357. Defendant filed a motion to suppress all evidence obtained by Chief Hille during the stop. Two days before the hearing on defendant's motion, Mrs. Younger told Chief Hille that she did not call him on January 25. According to Chief Hille, Mrs. Younger said that she was working at the time he received the call on that date.

Following a hearing, at which the testimony of Chief Hille was the only evidence offered, the trial court granted defendant's motion to suppress. The trial court concluded that Chief Hille's stop of defendant was a "bad stop" because a "naked telephone call is not enough to authorize a stop of this vehicle."

"A police officer may stop the driver or occupants of an automobile for investigatory purposes if the officer has 'a reasonable articulable suspicion, based upon objective facts, that the individual is involved in criminal activity.'" Freeman v. Commonwealth, 20 Va. App. 658, 660-61, 460 S.E.2d 261, 262 (1995) (quoting Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991)). To determine whether there was a reasonable suspicion justifying an investigatory stop, we must examine the totality of the circumstances from the perspective of a "reasonable police officer with the knowledge, training, and

experience of the investigating officer."  Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989).

Information provided by an anonymous or known informant may establish an articulable, reasonable suspicion for a police officer to execute a Terry stop if the information possesses "sufficient 'indicia of reliability.'"  See Alabama v. White, 496 U.S. 325, 328-31, 110 S. Ct. 2412, 2415-16, 110 L.Ed.2d 301 (1990); Adams v. Williams, 407 U.S. 143, 146-47, 92 S. Ct. 1921, 1923-24, 32 L.Ed.2d 612 (1972); Bulatko v. Commonwealth, 16 Va. App. 135, 137, 428 S.E.2d 306, 307 (1993); Beckner v. Commonwealth, 15 Va. App. 533, 535, 425 S.E.2d 530, 531 (1993). Specifically, the officer must have some objective basis for assessing both the informant's personal reliability and "the reliability of the informant's knowledge of the information contained in the report."  Beckner, 15 Va. App. at 535-36, 425 S.E.2d at 532.

When determining whether an informant's tip possessed sufficient indicia of reliability to establish articulable reasonable suspicion, a court must consider the totality of the circumstances "taking into account the facts known to the officers from personal observation, and giving the . . . tip the weight it deserved in light of its indicia of reliability . . . ."  White, 496 U.S. at 330-31, 110 S. Ct. at 2416.  If a tip has a relatively low degree of reliability because it is from an anonymous informer, more information will be required to

establish the "requisite quantum of suspicion," such as "independent corroboration of significant aspects of the tip." Id. at 331, 332, 110 S. Ct. at 2416, 2417. Less verification of a tip is necessary when the police are more familiar with the informant. See id.; Adams, 407 U.S. at 146-47, 92 S. Ct. at 1923-24 (holding that in-person discussion with known informant who had provided information in the past was sufficient indicia of informant's reliability); Johnson v. Commonwealth, 20 Va. App. 49, 54, 455 S.E.2d 261, 264 (1995) (stating that the fact that informants had previously provided information that resulted in arrests and successful prosecutions was an indicia of their reliability); Beckner, 15 Va. App. at 535, 425 S.E.2d at 531-32 (stating that face-to-face confrontation with previously unknown informant provided indicia of informant's personal reliability).

Upon appeal from an order granting a defendant's motion to suppress, the Commonwealth has the burden to show that the trial court's decision was erroneous. See Stanley v. Commonwealth, 16 Va. App. 873, 874, 433 S.E.2d 512, 513 (1993). We must review the evidence in the light most favorable to the defendant, the prevailing party below, granting him "all reasonable inferences fairly deducible therefrom." See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991); Reynolds v. Commonwealth, 9 Va. App. 430, 436, 388 S.E.2d 659, 663 (1990). We review the trial court's findings of historical fact only for "clear error" and "give due weight to inferences drawn from those

facts by resident judges and local law enforcement officers."
Ornelas v. United States, 517 U.S. ___, ___, 116 S. Ct. 1657,
1663, 134 L.Ed.2d 911 (1996).  We review the trial court's
determination of reasonable suspicion de novo.  See id. at ___,
116 S. Ct. at 1659.

We hold that Chief Hille's stop of defendant was a valid
Terry stop.  The information provided to him by the caller
possessed sufficient indicia of reliability from the perspective
of a reasonable police officer with Chief Hille's knowledge and
experience to provide an articulable basis for the chief to
suspect that the driver of the Oldsmobile was committing a crime.

First, the caller's tip that the Oldsmobile was uninsured
was sufficiently reliable from the perspective of a reasonable
police officer in Chief Hille's position to warrant the chief's
subsequent response.  Because we view the evidence in the light
most favorable to defendant, we must accept as fact that the
person who called Chief Hille was not Mrs. Younger.  However, we
conclude that Chief Hille's reliance on the tip was justified
because he reasonably believed that he was speaking with Mrs.
Younger, who was both known to him and the car's owner.

Under the circumstances of this case, the chief's belief
that the caller was Mrs. Younger was reasonable.  When
determining reasonable suspicion,
>            reasonableness is judged from the perspective
>            of a reasonable officer on the scene allowing
>            for the need of split-second decisions and
>            without regard to the officer's intent or
>            motivation.

Scott v. Commonwealth, 20 Va. App. 725, 727, 460 S.E.2d 610, 612 (1995) (citing Graham v. Connor, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 1872, 104 L.Ed.2d 443 (1985)). In addition, we give deference to the inferences the police officer draws from the historical facts with which he or she is faced. See Ornelas, 517 U.S. at ___, 116 S. Ct. at 1663; Murphy, 9 Va. App. at 144, 384 S.E.2d at 128.

Based on Chief Hille's reasonable belief that he was speaking with Mrs. Younger, the caller's information about the Oldsmobile possessed sufficient indicia of reliability to justify Chief Hille's response. Cf. Hill v. California, 401 U.S. 797, 804-05, 91 S. Ct. 1106, 1111, 28 L.Ed.2d 484 (1971) (holding that arrest of person not named in warrant due to an understandable mistake of identity and the subsequent search did not violate the Fourth Amendment because the arrest and search were "reasonable response[s] to the situation facing [the officers] at the time"). First, Chief Hille could reasonably conclude that the caller was personally reliable because he knew Mrs. Younger and had received information from her in the past about defendant. Chief Hille's determination that the caller's statement was reliable was likewise reasonable under the circumstances. Chief Hille had an objective basis to assess the reliability of the caller's knowledge that the Oldsmobile was uninsured because Mrs. Younger, as the car's owner, was likely to know the status of the car's insurance.

Finally, Chief Hille's knowledge that the insurance on the Oldsmobile had been canceled justified his decision to conduct an investigative stop of the driver of the vehicle. Under Code § 46.2-707, it is a Class 3 misdemeanor for the non-owner of an uninsured vehicle to drive the vehicle knowing that the uninsured motor vehicle fee was unpaid. From "Mrs. Younger's" statement that she had "dropped" the insurance on the Oldsmobile and the fact that she was calling the police to report that someone might be driving the car, Chief Hille could reasonably infer that she had yet to pay the uninsured motor vehicle fee. Because Chief Hille harbored an articulable, reasonable suspicion that the driver of the Oldsmobile was engaged in criminal activity, his investigative stop of the Oldsmobile did not violate the Fourth Amendment.

For the foregoing reasons, we reverse and remand the order of the trial court granting defendant's motion to suppress and remand for further proceedings consistent with this opinion.

Reversed and remanded.