COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Bumgardner and Humphreys
Argued at Richmond, Virginia


COMMONWEALTH OF VIRGINIA

v.   Record No. 1593-02-2

                                        MEMORANDUM OPINION[*] BY
KEITH FRANKLIN WEEDEN               JUDGE RUDOLPH BUMGARDNER, III
                                            DECEMBER 3, 2002
COMMONWEALTH OF VIRGINIA

v.   Record No. 1594-02-2

CEDRIC ANTHONY FASSETT


          FROM THE CIRCUIT COURT OF HANOVER COUNTY
                John Richard Alderman, Judge

     Amy L. Marshall, Assistant Attorney General
     (Jerry W. Kilgore, Attorney General, on
     briefs), for appellant.

     M. Cody Cowan (Arnold R. Henderson; Arnold
     Henderson & Associates, on brief), for
     appellee Keith Franklin Weeden.

     Russell E. Allen (Witmeyer & Allen, P.L.C.,
     on brief), for appellee Cedric Anthony
     Fassett.


     Keith Franklin Weeden and Cedric Anthony Fassett were

charged with possession of marijuana and conspiracy to

distribute marijuana. The Commonwealth appeals the granting of

their motions to suppress evidence. Concluding the officers

─────────────
     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

lacked reasonable suspicion to conduct a pat-down search, we affirm.

The Commonwealth must show the trial court's ruling on the motion to suppress constituted reversible error when considered in the light most favorable to the defendants. McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc); Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "Ultimate questions of reasonable suspicion and probable cause to make a warrantless search" involve questions of both law and fact and are reviewed de novo on appeal. Ornelas v. United States, 517 U.S. 690, 699 (1996).

Sergeant Sizemore and Deputy Lantz of the Hanover County Sheriff's Office responded to a dispatch that two men in a restaurant were "possibly" armed. They met with the manager, who pointed out the defendants. The manager explained that an off-duty police officer had reported the defendants "may be armed." The officers observed nothing unusual about the appearance or behavior of the defendants, who were seated in a booth. The officers approached them and told the defendants someone had reported they had weapons. Sergeant Sizemore told the defendants to put their hands on the table and slide out of the booth. As Fassett exited, Sizemore saw a fist-sized bulge in his waistband and thought it might be a weapon. Sizemore patted the bulge and felt what he thought was a plastic bag of marijuana. He seized the bag, which turned out to contain

-

marijuana.  Weeden then consented to a search of his jacket, which was lying on the seat.  It contained more marijuana and plastic bags.

The source of the information, upon which the police acted, testified at the supression hearing.  In this case, we thus know precisely the information available to the police to authorize their responses.  Michael Mabry was an off-duty Richmond police detective.  While eating at the restaurant, he noticed the defendants because they were loud and boisterous as they entered.  The two sat in a booth about seven to ten feet from Mabry.  As Weeden slid into the booth, "his coat fell open and there appeared to have been something heavy in his pocket." Mabry did not see what the heavy object was and did not determine conclusively that it was a weapon.

While observing the defendants, Mabry remembered investigating unsolved robberies in Richmond conducted by "two gentlemen wearing large coats and bandanas, one dark-complected and one light-complected."  Mabry then informed the manager "something didn't look right" and suggested the manager call the police "to have someone ride through to keep an eye on the place."  The manager placed the call, and Mabry spoke to the dispatcher himself.  He reported what he believed he had observed and "explained . . . you might just want to have

-

someone come through" and keep "an eye on the area."[1]  Mabry left the restaurant and never spoke to the arresting officers.

In deciding whether a seizure occurred, we determine "whether, under a totality of circumstances, a reasonable person would have believed that he . . . was not free to leave." McGee, 25 Va. App. at 199-200, 487 S.E.2d at 262.  A significant factor to consider is whether an officer has informed an individual that he "has been specifically identified as a suspect in a particular crime."  Id. at 200, 487 S.E.2d at 262; United States v. Gray, 883 F.2d 320, 323 (4th Cir. 1989).  In this case, the officers specifically told the defendants that someone had seen them with weapons, and asked them to step out of the booth.  The Commonwealth agrees that the officers had to have reasonable suspicion to pat-down Fassett as he slid out of the booth.  It maintains that Mabry's observations amounted to reasonable suspicion.

The investigative detention "must be based upon reasonable articulable suspicion that criminal activity is or may be afoot."  McGee, 25 Va. App. at 199, 487 S.E.2d at 261.  The officers need "a particularized and objective basis for suspecting" the defendants are engaged in criminal activity. United States v. Cortez, 449 U.S. 411, 417-18 (1981); Bass v.

---

[1] When asked if he used the word "weapon or handgun" while talking to the manager, Mabry responded, "I said possibly it could have been the butt of a weapon."

-

Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923 (2000) ("a minimal level of objective justification" is required). A reasonable suspicion "must be more than an unparticularized suspicion or 'hunch.'" Terry v. Ohio, 392 U.S. 1, 27 (1968).

Mabry observed a heavy object in the pocket of Weeden's jacket as it fell open. He did not see the object and did not specifically identify the heavy object as a weapon. After recalling a string of robberies in Richmond, Mabry suggested the manager call the police to have them increase patrols in the area. Mabry's observation amounted to neither reasonable suspicion that the defendants were armed and dangerous nor that they were engaged in criminal activity. He reported that the heavy object might be a weapon and suggested the police keep an eye on the area. When the officers arrived, they did nothing to investigate the report or to corroborate Mabry's suspicions. The officers did not see the defendants engage in any suspicious conduct. Nothing was remarkable about their appearance, and nothing suggested they were engaged in any criminal activity.

Information supporting an officer's investigative detention of a suspect "must be reliable in its assertion of illegality." Florida v. J.L., 529 U.S. 266, 272 (2000). "The fact that the . . . hunch is conveyed to the police does not raise the hunch to the level of reasonable suspicion." Beckner v. Commonwealth, 15 Va. App. 533, 537, 425 S.E.2d 530, 533 (1993). This is not a case where the officers were given a conclusory assertion that

-

the defendants were armed from which they could infer personal observation.  Id. at 537, 425 S.E.2d at 533.  If information that a defendant might be armed is insufficient for a detention, it cannot be used as the basis for a pat-down.  Harris v. Commonwealth, 262 Va. 407, 416-17, 551 S.E.2d 606, 611 (2001).

In this case, the facts do not constitute a reasonable suspicion of criminal activity.  We conclude the officers lacked a particularized and objective basis to support a detention of the defendants and to permit a pat-down of them.  Accordingly, we affirm.

Affirmed.